## METTEE *v.* BOONE

[Nos. 346 & 435, September Term, 1967.]

*Decided November 12, 1968.*

*Motion for rehearing filed December 12, 1968; denied December 12, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Louis A. Scholz* for appellant.

*James Willard Davis,* with whom were *William B. Dulany* and *Dulany & Davis* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Appellant (Mettee), who was the plaintiff in the Circuit Court for Carroll County, docketed his suit against appellee (Boone) on 17 May 1967. He alleged the breach of a contract, dated 3 September 1959, between himself and Boone for the construction of a house on River Road in Howard County for the sum of $20,527. The contract, consisting of 32 pages, was filed with the declaration. The architect's drawings were omitted. He alleged further that Boone "particularly agreed in said written contract that all water pipes should be concealed in the walls and ceilings" and "particularly that all cold water lines shall be of 'L' copper tubing as manufactured by Revere Copper and Brass Company or of equal quality." Mettee went on to allege "that on or about October 1965 * * * [he] observed for the first time a stain showing on one of the ceilings," that it "came from a leaking water pipe," that Boone, in violation of the contract "had used inferior non-specification materials which had been concealed from normal view and inspection." He charged that Boone "knew or ought to have known that this piping, which is now defective * * * was not of the kind specified." Whether or not the leaky pipe was a cold water pipe is not mentioned. Nor is it stated in what respect the leaky pipe was defective. Mettee claimed $1,000 damages.

Attached to the declaration was an "affidavit in support of summary judgment," in which it is said "that through negligence chargeable to * * * [Boone] damages were caused" in the amount and as described "on the attached itemized estimate or repair bill."

There is no motion for summary judgment in the record nor is there an itemized estimate or repair bill. But how a piece of paper can be at the same time both an "estimate" and "a repair bill" is not explained.

Boone appeared seasonably and filed the traditional general issue pleas and a plea of limitations. He then filed an answer to Mettee's non-existent "motion for summary judgment,"

which he supported with an affidavit. His answer alleges a genuine dispute as to certain facts "material to * * * [Mettee's] claim." He states that the materials, including the water pipes, were installed in accordance with the contract, that Mettee's claim is barred by limitations, that the pipes were not concealed from Mettee, that they were noticeable by ordinary inspection during construction and in some places are still noticeable, and that the quality and kind of all water pipes were in accord with the agreed specifications. All of this is reiterated in the supporting affidavit which states additionally that, during construction, Mettee "visited the site and inspected the work * * * almost daily, and observed the installation of [the] water pipes, some of which were installed within walls and some of which * * * remained exposed," and that the work, which was completed before 1 March 1960, was inspected and passed by the plumbing inspector of Howard County and by representatives of the prospective mortgagee.

Boone thereupon moved for summary judgment claiming "no dispute as to any material fact" and that he was "entitled to judgment as a matter of law on the pleadings filed." Mettee's affidavit in opposition agrees there is "no dispute as to a material fact" including the fact that his action was filed "more than three years after the date of the contract" but not "more than three years after * * * [his] discovery of * * * [Boone's] breach of duty." Mettee agrees that the pipes were "visible in part" but that the markings thereon were understandable to "the ordinary layman is disputed." He claims he did not know the significance of the letter "L" used in specifying the water lines until October 1965, when the plumber who was "called in" to fix the leak explained it to him. He says further that when he complained to Boone, Boone told him to "call his plumber and get him to do what was right and replace the pipe."

On 11 August 1967, a few days after hearing arguments of counsel, Judge Weant filed an opinion stating his reasons for granting Boone's motion for summary judgment. Judge Weant, in part, said:

"Certainly, the Plaintiff's Nar, without Motion for a

Summary Judgment, without an itemized statement of the claim, and in face of the affidavit of the Defendant, could not be entitled to a summary judgment.

"On the other hand, the Defendant would be entitled to a Summary Judgment by reason of the Plaintiff's action being barred by the Statute of Limitations unless the effect of said Statute had been tolled by Article 5[7], Section 14 of the Annotated Code of Maryland. However, in order for Section 14 to be controlling the Plaintiff must have been kept in ignorance of his cause of action by the fraud of the Defendant until the 'time at which such fraud shall or with usual or ordinary diligence might have been known or discovered.' There is no allegation in the Plaintiff's plea to the Defendant's Motion for a Summary Judgment that there was any fraud on the part of the Defendant by which the Plaintiff was kept in ignorance of his cause of action. There are certain allegations relative to the kind of pipe installed in the house built by the Defendant. These, however, do not necessarily indicate fraud nor is there any indication that this could not have happened without the involvement of any element of fraud."

Six weeks later, 28 September 1967, Mettee filed a new suit against Boone. Under the heading "First Cause, First Count" he recites virtually the same facts, adding only that Boone "held himself out to be" competent to construct the house, that "the inferior quality of the pipe was *at least a partial cause* of the damage" and that the pipe was "fraudulently, deceitfully installed." He alleges that "as a result of the negligence, recklessness, and carelessness, and/or *as a result of accidental means,* * * * [Boone] negligently performed his duties under the contract." (Emphasis added.) He claims $1,600 damages. In "Second Count" he alleges that "by reason of * * * [Boone's] negligence he was impaired in the use of his home for entertaining and for business connected entertaining," claiming $300 damages. In "Second Cause, First Count" he alleges a breach of "the expressed and implied warranties" in the contract and claims $1,600 damages.

Boone, on 16 October 1967, pleaded the general issue, limitations and res judicata and, at the same time, filed a motion for summary judgment. In his answer and the supporting affidavit Mettee, for the most part, repeated what had been submitted in the first suit.

On 30 November 1967, Mettee, with leave of court, "submit[ted] for interlineation * * * [an] amendment" to the declaration. This appears to restate the allegation that the pipe "was fraudulently and deceitfully installed by" Boone. After refiling the same pleas Boone again moved for summary judgment which was granted after a hearing on 5 February 1968.

The appeal to this Court in No. 346 was filed on 8 September 1967, 20 days before the second suit was docketed in the Circuit Court for Carroll County. The appeal in No. 435 was filed 26 February 1968.

## No. 346

We are under the impression that Mettee has all but abandoned the notion that he is entitled to a summary judgment. It does indeed seem to be a lost cause. As Judge Weant observed, there is neither a motion for summary judgment nor an itemized statement of claim. Even more troublesome is the admission that included in the amount ($1,000) said to be "justly due and owing" are other "damages whose exact value cannot be estimated."

The only question then is whether Judge Weant reached a correct result in granting the summary judgment in favor of Boone. In his motion for summary judgment Boone asserted there was *no* dispute as to any material fact but in his answer to Mettee's non-existent motion for summary judgment he insisted there *was a dispute* as to certain facts "material to * * * [Mettee's] claim." Nevertheless it seems clear to us that there is no dispute as to the material facts bearing on the question of limitations. As Judge Weant said the statute is a bar to Mettee's claim unless it can be said that Code, Art. 57 § 1 (1968 Repl. Vol.)[1] has tolled the statute. It will be noted that

---

1. "§ 14. Ignorance of cause of action induced by fraud.
   "In all actions where a party has a cause of action of which he has been kept in ignorance by the fraud of the

nowhere in Mettee's pleadings will there be found the averment of any facts or circumstances which could be said to constitute, or even suggest, fraud. In fact, the very words "fraud" and "fraudulent" are not used. See *Brack v. Evans,* 230 Md. 548, 187 A. 2d 880 (1963). Boone declares, in his affidavit of defense, that the water pipes were in accord with the specifications and he denies installing any "non-specification" pipes. Moreover, he says, Mettee, who inspected the work "almost daily," actually "observed" the installation of the pipes, some of which (in the basement) remained exposed. Mettee, in his affidavit, does not deny the daily inspections and he admits that some of the pipes remained exposed, but, he says, he did not understand the markings on the pipes at that time. We think it odd that nowhere in the pleadings is there a statement that the leaky pipe was, in fact, a *cold water pipe,* nor a statement as to why the pipe leaked. The case presents other oddities. Mettee, for example, "agrees to be lenient and reasonable in permitting substitutes of materials equal to or as good as those specified." Boone agrees to "allow * * * [Mettee] to inspect all work and all materials at all times." There is, also, a specific provision in the contract that any dispute as to specifications "shall be settled by a board consisting of three persons," one to be selected by Mettee, one by Boone "and the third by the two so selected."

In *Piper v. Jenkins,* 207 Md. 308, 113 A. 2d 919 (1955), which we regard as controlling, we said:

> "It is thus entirely true that Section 14 of our Statute of Limitations does not require that the defendant must commit a fraud distinct from the original fraud for the purpose of keeping the plaintiff in ignorance of his cause of action. But it is also true that this section, by its own terms, is made to apply only in those cases where two conditions are shown to exist: (1) where a party has been kept in ignorance of his cause

---

adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall or with usual or ordinary diligence might have been known or discovered."

of action by the fraud of the adverse party, and (2) where he himself has exercised usual or ordinary diligence for the discovery and protection of his rights. Hence, as Judge Groner stated in *Insurance Co. of North America v. Parr,* 4 Cir., 44 F. 2d 573, 576, this section 'enjoins upon a party invoking its terms a showing of diligence, and if in the exercise of diligence, the fraud of the adverse party might have been discovered, the failure to exercise it is fatal to the right after the period of limitations has run.' " *Id.* at 318.

\* \* \*

"As we have pointed out, Section 14 requires a plaintiff to show affirmative [sic] that he was kept in ignorance of his right of action by the fraud of the adverse party. The replication in this case does not specifically allege how defendants kept plaintiffs in ignorance of their right of action. But the chief defect of the replication is that it does not specifically allege how plaintiffs made the discovery of the fraud, and why they did not make the discovery sooner than they did. The replication is entirely lacking in any specific averment as to what diligence plaintiffs exercised to discover the fraud. We accordingly conclude that the allegations of the replication are not specific enough to satisfy Section 14." *Id.* at 319.

*See also Consolidated Public Utilities Co. v. Baile,* 152 Md. 371, 136 A. 825 (1927).

Mettee complains that his status as an "ordinary layman" somehow excuses his failure to discover the use of something other than " 'L' copper tubing as manufactured by Revere Copper and Brass or approved equal." In this regard it should be noted that the original plans and specifications submitted by Boone were for a $25,500 house. Mettee negotiated substitutions with Boone resulting in a $5,000 reduction. It must be assumed, therefore, that Mettee was more than casually acquainted with the specifications. He chose to be his own inspector cumstances, he was a cut or two above an "ordinary layman" and the contract gave him that privilege. We think, in the cir-

but even an ordinary layman can ask what kind of pipe is being installed in his house. In the circumstances diligence would seem to require no less.

Finally Mettee urges us to hold that the clause, appended in handwriting to the concluding paragraph of his affidavit in opposition to Boone's motion for summary judgment, amounts to an acknowledgment sufficient to revive his remedy and avoid the operation of the statute. That clause, stated verbatim, is as follows:

> "subsequently upon complaint by plaintiff to defendant, said defendant said 'call his plumber and get him to do what was right and replace pipe'."

An acknowledgment, to avoid the operation of the statute, must be of a presently subsisting debt; it must be clear and distinct; it must be an unqualified admission of a subsisting indebtedness. *Doughty v. Bayne,* 222 Md. 361, 365, 160 A. 2d 609 (1960); *Crawford v. Richards,* 197 Md. 289, 293, 79 A. 2d 143 (1951). That the clause quoted above falls far short of constituting such an acknowledgment seems too patent to require further discussion.

### No. 435

Here the same facts are alleged but instead of claiming that they constitute a breach of contract, as he did in No. 346, Mettee now says they establish negligence, a breach of warranties expressed and implied in the contract, and the fraudulent and deceitful installation of an inferior quality of pipe.

In *Alvey v. Alvey,* 225 Md. 386, 389-90, 171 A. 2d 92 (1961), Judge Marbury, for the Court, said:

> "Here the appellant seeks to litigate an issue which he could have litigated in the first case. * * * [E]nlightened hindsight must give way to a higher principle based on the protection and security of rights, and the preservation of the repose of society."
>
> * * *
>
> "The appellant uses the same facts as in the first case but only seeks different conclusions. He claims that since the first bill did not allege fraud, *res judicata* does not apply. If this were so, it would strike at the

essence of *res judicata* and the stability of legal decisions."

Judge Marbury concluded his opinion with a quotation from *Henderson v. Henderson,* 3 Hare 115, which is peculiarly applicable to the case at bar and which is worth repeating:

> " 'In trying this question, I believe I state the rule of the Court correctly that where a given matter becomes the subject of litigation in, and of adjudication by, a Court of competent jurisdiction, the Court requires the parties to bring forward their whole case, and will not, except under special circumstances permit the same parties to open the same subject of litigation in respect of a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward only because they have from negligence, inadvertence, or even accident, omitted a part of their case. The plea of *res judicata* applies, except in special cases, not only to the points upon which the Court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence might have brought forward at the time.' " *Id.* at 391.

*See also Pat Perusse Realty Co. v. Lingo,* 249 Md. 33, 35, 238 A. 2d 100 (1968) ; *White v. Athey,* 229 Md. 28, 30, 181 A. 2d 466 (1962).

Just as the embittered French Legionnaire who described a camel as a horse designed by a committee knew perfectly well that it was still a camel, Mettee should have known that the same facts, having once been used, without success, in pursuit of one conclusion, cannot, under another label, still be used to obtain a different conclusion. We see no reason for disturbing the judgments entered by Judge Weant.

*Judgment in No. 346 affirmed.*
*Costs to be paid by appellant.*
*Judgment in No. 435 affirmed.*
*Costs to be paid by appellant.*