525 A.2d 232

**KENT COUNTY BOARD OF EDUCATION, et al.**

v.

**John R. BILBROUGH, Jr.**

**No. 113, Sept. Term, 1986.**

Court of Appeals of Maryland.

May 13, 1987.

---

Cynthia M. Hahn (Joseph C. Wich, Jr. and Cook, Howard, Downes & Tracy, on the brief), Towson, for appellants.

Jared W. Ingersoll, Chestertown, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE, JJ., and MARVIN H. SMITH and CHARLES E. ORTH, Jr. (retired), specially assigned.

RODOWSKY, Judge.

The issue here is whether respondent's claims against petitioners are barred by claim preclusion because the same claims had previously been adjudicated adversely to the respondent. The question presented turns on the application to the facts in this case of the elusive concept, "claim," as used in the law of claim preclusion.

Before stating the facts it seems helpful to review briefly the terms used for the concepts involved. The Supreme Court in *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56, 59 n. 1 (1984) put it this way:

> The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." See Restatement (Second) of Judgments, Introductory Note before ch. 3 (1982); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (1981). Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. See Restatement, *supra*, § 27. This effect also is referred to as direct or

collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar. See *id.,* Introductory Note before § 24.

The prior judgment of concern here was entered in a civil rights action brought by respondent, John R. Bilbrough, Jr. (Bilbrough), and another against seven defendants, including the petitioners here, Kent County Board of Education (the Board) and William Loller (Loller), in the United States District Court for the District of Maryland. The case was tried without a jury before Honorable Joseph H. Young who entered judgment for the defendants. That judgment was affirmed in an unpublished opinion by the United States Court of Appeals for the Fourth Circuit.

Bilbrough had been hired by the Board in the spring of 1978 as manager of maintenance services. He served in that capacity until the summer of 1981 when the position was abolished and its duties consolidated with those of another job classification. Bilbrough sought to show in the federal action that he was terminated for political activity on behalf of candidates for election to the Board who were favorable to the then incumbent county superintendent of schools. Judge Young found that the decision by the successor superintendent to eliminate Bilbrough's position "was made without any consideration of Bilbrough's previous political activities." The court found that the new superintendent viewed Bilbrough as "an ineffective and unproductive manager of maintenance services" and that the superintendent sought to achieve greater efficiency and cost savings.

While Bilbrough's appeal to the Fourth Circuit was pending he brought the instant action in the Circuit Court for Kent County against the Board, Loller, and four others. The complaint contained seven counts, as to all of which Loller and the Board obtained summary judgment based on claim preclusion. After a certification under Rule 2–602,

Bilbrough appealed the judgments in favor of the two petitioners to the Court of Special Appeals. Before that court Bilbrough limited his argument to counts I through III which claimed invasions of alleged privacy interests. The Court of Special Appeals held that the privacy claims were not precluded; it reversed as to them; and affirmed as to counts IV through VII.

Each of the first three counts also alleged that the privacy invasions had caused Bilbrough to lose his job as maintenance supervisor and to suffer reduced earnings, for which he claimed damages. The intermediate appellate court held that issue preclusion barred relitigating those claims for damages in the instant action. Petitioners obtained certiorari from this Court for review of the reversal of the circuit court judgment with respect to the privacy counts of the complaint. There was no cross-petition by Bilbrough.

We now turn to the allegations against Loller and the Board in the first three counts, as the Court of Special Appeals has limited those counts by excluding any claim, on any theory, for lost wages. In count I Bilbrough says that in June of 1980 he sought employment with the police department of Rock Hall, a municipality in Kent County. In his pre-employment interview Bilbrough disclosed a 1970 conviction in Caroline County, Maryland, for breaking and entering and petty larceny for which he had been sentenced to eighteen months probation, later reduced to one year, and as to which he had made restitution, amounting to $99. The Rock Hall police department also obtained Bilbrough's criminal history record information from a central repository maintained by the Maryland State Police. Count I further alleges that two of the defendants, respectively a policeman and a councilman of Rock Hall, took the criminal history record information from the police files, made photocopies of it, and provided it to Loller who in turn made it available to other members of the Board. Bilbrough asserts that this conduct violated a number of statutes and regulations, including § 524(b) of the Omnibus Crime Con-

trol and Safe Streets Act of 1968, now codified as 42 U.S.C. § 3789g(b), and gives rise to a private cause of action.[1]

In count II Bilbrough avers that Loller caused one of the individual co-defendants to obtain the docket entries of Bilbrough's conviction from the Circuit Court for Caroline County, avers that this was done in order to hide the fact that the information had been illegally obtained from the Rock Hall police department files, and concludes that it was tortious to obtain a copy of the public court record for that purpose.[2]

Bilbrough's complaint labels count III: "Invasion of Privacy, False Light." There he alleges that he had ordered inscribed ballpoint pens and business cards which described him as " 'Manager of Maintenance and Security, Kent County Schools,' " but that the defendants falsely characterized these purchases as "a misuse or embezzlement of state funds or as an unauthorized impersonation of a police officer." He further avers that he had been authorized to drive his own vehicle from school to school on security rounds for which he received an allowance of fourteen cents per mile but that the defendants had characterized his expense vouchers as dishonest and had also accused him of stealing gasoline from Kent County pumps. Count III additionally asserts that in March 1981 when Bilbrough "had just come from target practice," he responded to a report of a break-in at a county high school. He says he met police officers at the scene, that they had their guns drawn, and that he also drew the target pistol which he happened still to have with him. Bilbrough alleges that the defendants publicized this conduct in such a way as to make it appear that he "was a maniacal, gun-toting, dangerous person." [3]

---

1. Whether the allegations of any of the first three counts of Bilbrough's complaint state claims upon which relief can be granted is not before us.

2. *See* n. 1.

3. *See* n. 1.

In each of these three counts Bilbrough claims that the acts complained of caused, *inter alia,* emotional and mental distress.

The opinion of the Court of Special Appeals relied heavily on our decision in *MPC, Inc. v. Kenny,* 279 Md. 29, 33, 367 A.2d 486, 489 (1977), where we observed:

> Courts elsewhere have applied a variety of tests in determining whether two causes of action are the same for purposes of invoking res judicata. The measure which seems to find favor with most courts, and one which we have applied, is whether the same evidentiary facts would sustain both actions. *See Mettee v. Boone,* 251 Md. 332, 340–41, 247 A.2d 390 (1968); *Alvey v. Alvey,* [225 Md. 386,] 390[, 171 A.2d 92 (1961)]; *Williams v. Messick,* 177 Md. 605, 613, 11 A.2d 472 (1940).

The intermediate appellate court analyzed whether the same evidentiary facts would sustain both of Bilbrough's actions. The analysis proceeded in much the same fashion as one would apply the required evidence test to determine whether multiple convictions had offended double jeopardy. *Cf. Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Mason v. State,* 302 Md. 434, 441–42, 488 A.2d 955, 958–59 (1985).

In the court's view counts I and II concerned alleged public disclosure of private facts, the publication of which would be offensive and objectionable to a reasonable person of ordinary sensibilities. The court considered count III's allegations to involve public disclosure of a fact which falsely portrayed the fact and which unreasonably placed Bilbrough in a false light before the public. The Court of Special Appeals concluded that it was "evident that the evidence required to establish [Bilbrough's] wrongful discharge claim based upon the violation of his first amendment rights is different from that necessary to sustain his invasion of privacy counts in this action."

Petitioners attribute preclusive effect to the judgment of the United States District Court for the District of Mary-

land. "Federal law determines the effects under the rules of res judicata of a judgment of a federal court." Restatement (Second) of Judgments § 87 (1982). No party has argued that federal law differs from Maryland law. Therefore we assume that the federal law of claim and issue preclusion is the same as Maryland law.[4]

Although we agree with the result reached by the Court of Special Appeals, we are concerned that sole reliance on the same evidence or required evidence analysis to determine if the same claim is involved in two actions may improperly narrow the scope of a "claim" in the preclusion context.

In the history of Anglo-American law, the law of claim preclusion has undergone a considerable evolution. At common law, when the forms of action were narrow and rigid, a plaintiff generally could not join one form of action with another. On the other hand a plaintiff who had selected a writ which was inappropriate to the facts of that plaintiff's case could in general sue again by utilizing the appropriate writ. *See* F. James & G. Hazard, *Civil Procedure* § 11.7, at 540 (2d ed. 1977).

> This allowed for some multiplicity of suits to redress a single grievance or wrong, but at least it did not compound the hardship of the formulary system by piling substantive injustice on procedural technicality. [*Id.*]

In the nineteenth century, a fairly narrow definition of "cause of action" was used for claim preclusion, reflecting the limitation on joinder of causes of action at common law. *Id.*, § 11.8, at 541.

A summary of the effects of the forms of action on the substantive law of claim preclusion is found in Restatement (Second) of Judgments § 24, comment *a*, at 197 which reads:

---

**4.** We also assume, *arguendo,* that petitioners are correct in their argument that respondent could have joined his invasion of privacy claims as pendant state law claims to his civil rights action in the federal court.

[T]here was also some adherence to a view that associated claim with the assertion of a single primary right as accorded by the substantive law, so that, if it appeared that the defendant had invaded a number of primary rights conceived to be held by the plaintiff, the plaintiff had the same number of claims, even though they all sprang from a unitary occurrence. There was difficulty in knowing which rights were primary and what was their extent, but a primary right and the corresponding claim might turn out to be narrow. Thus it was held by some courts that a judgment for or against the plaintiff in an action for personal injuries did not preclude an action by him for property damage occasioned by the same negligent conduct on the part of the defendant—this deriving from the idea that the right to be free of bodily injury was distinct from the property right. Still another view of claim looked to sameness of evidence; a second action was precluded where the evidence to support it was the same as that needed to support the first. Sometimes this was made the sole test of identity of claim; sometimes it figured as a positive but not as a negative test; that is, in certain situations a second action might be precluded although the evidence material to it varied from that in the first action. Even so, claim was not coterminous with the transaction itself.

*See also* C. Clark, *Handbook of the Law of Code Pleading* § 19 (2d ed. 1947); 1B J. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* ¶ 0.410 (2d ed. 1984); Schopflocher, *What is a Single Cause of Action for the Purpose of the Doctrine of Res Judicata?*, 21 Or.L.Rev. 319 (1942); Vestal, *Res Judicata/Claim Preclusion: Judgment for the Claimant*, 62 Nw.U.L.Rev. 357 (1967).

▪ The Maryland law of claim preclusion has moved far enough from the influence of the common law forms of action that it seems to be settled here that a mere change in the legal theory, applied to the same set of facts previously litigated, will not in and of itself avoid claim preclusion. For example, where the owner of a newly constructed house

sued the builder alleging that leaking pipes had been fraudulently concealed or negligently installed, the action was barred by judgment for the builder in a previous action between them in which the owner alleged breach of their express contract based on leaking pipes. *Mettee v. Boone,* 251 Md. 332, 247 A.2d 390 (1968). Similarly illustrative is *Alvey v. Alvey,* 225 Md. 386, 171 A.2d 92 (1961). In the prior action the plaintiff had sought specific performance from his brother and sister-in-law of a contract to convey land then titled in the defendants' names as tenants by the entireties. The plaintiff's theory was that his sister-in-law was estopped to deny her obligation to him, although only the plaintiff's brother had signed the contract. After the sister-in-law's demurrer to the complaint in the first action had been sustained, the plaintiff dismissed and brought another action which sought (1) voiding of the straw conveyances by which his brother and sister-in-law held title as tenants by the entireties, and then (2) specific performance of the same contract with his brother. We said that the plaintiff

> uses the same facts as in the first case but only seeks different conclusions. He claims that since the first bill did not allege fraud, *res judicata* does not apply. If this were so, it would strike at the essence of *res judicata* and the stability of legal decisions. [*Id.* at 390, 171 A.2d at 94.]

And in *Whitaker v. Whitaker,* 60 Md.App. 695, 484 A.2d 314 (1984) a divorced wife who had previously failed to establish an interest in her former husband's real estate based on an alleged partnership between them was barred from claiming in a subsequent action a constructive trust in that same real estate. *See also Williams v. Messick,* 177 Md. 605, 11 A.2d 472 (1940) (minority shareholder's derivative action against, *inter alia,* majority shareholder barred by judgment against minority shareholder in prior action against the corporation alleging waste by the majority shareholder and seeking appointment of a receiver); *Moodhe v. Schenker,* 176 Md. 259, 4 A.2d 453 (1939) (second

action to obtain gift, based on constructive delivery, barred by failure to show delivery in prior action).

 On the other hand, it is also clear that the scope of a cause of action for claim preclusion purposes is *not* as broad as the scope of permissible joinder under modern pleading codes. Maryland Rule 2–303(c) permits a party to "state as many separate claims or defenses as the party has, regardless of consistency and whether based on legal or equitable grounds." And *see* Fed.R.Civ.P., Rule 18(a) ("A party ... may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as he has against an opposing party."). This joinder of claims liberality for pleading purposes, however, is permissive and not mandatory. To make the scope of "claim" co-extensive with permissive joinder of claims in pleadings would have the same effect as a mandatory joinder for pleading purposes of all claims which the original plaintiff has against any original defendant. It appears that at most one American pleading system has gone so far as to mandate joinder by an original plaintiff of all outstanding contract claims which that plaintiff might have against a defendant. *See* 1B J. Moore, *supra*, ¶ 0.410, at 349–50 n. 3 and 1986–87 Cum.Supp. at 46*ff.*

On the spectrum of cases dealing with claim preclusion issues there is a considerable band between those cases in which the plaintiff's assertion of separate claims rests exclusively on a change in the common law pleading theory applied to the same facts and those cases in which the defendant's assertion of claim identity rests only on the availability under the pleading system to have joined the second claim in the prior action. Restatement (Second) of Judgments describes the current approach of courts to answering the same claim-separate claim conundrum in § 24, comment *a*, at 197:

> The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available

to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split.

Consequently, the American Law Institute in § 24 of Restatement (Second) of Judgments has adopted the following standards for determining the "Dimensions of 'Claim' for Purposes of Merger or Bar—General Rule Concerning 'Splitting' ":

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.[5]

The American Law Institute justifies and conditions the rule endorsed in § 24 by and on a modern procedural code.

---

**5.** Sections 18 and 19 of the Restatement present the following rules:

§ 18. Judgment for Plaintiff—The General Rule of Merger

When a valid and final personal judgment is rendered in favor of the plaintiff:

(1) The plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment; and

(2) In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.

§ 19. Judgment for Defendant—The General Rule of Bar

A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim.

This definition of claim to engross the relevant transaction, as envisioned in this Topic, simplifies the application of the rules of merger and bar (see, for example, § 25, Comment *a*); it enhances the benefits deriving from those rules without causing undue hardship. Equating claim with transaction, however, is justified only when the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined. A modern procedural system does furnish such means. It permits the presentation in the action of all material relevant to the transaction without artificial confinement to any single substantive theory or kind of relief and without regard to historical forms of action or distinctions between law and equity. A modern system allows allegations to be made in general form and reads them indulgently; it allows allegations to be mutually inconsistent subject to the pleader's duty to be truthful. It permits considerable freedom of amendment and is willing to tolerate changes of direction in the course of litigation. Parties can resort to compulsory processes besides private investigations to ascertain the facts surrounding the transaction, thereby measurably avoiding surprise at the trial. The pretrial conference contributes to the same end of developing the whole case. The law of res judicata now reflects the expectation that parties who are given the capacity to present their "entire controversies" shall in fact do so. [Restatement, at 198.]

We therefore generally approve of the approach to resolving the question of identity of claims found in § 24 of the Restatement. We also agree with the observation by Schopflocher, *supra,* 21 Or.L.Rev. at 324 that the "pragmatic" test "defies any attempt of abstract definition which could be applied to all cases." And Moore's *Federal Practice* at 361 doubts that the Restatement's substituting "transaction" for "claim" or "cause of action" to describe the unit of litigation to which preclusive effect is given, "[b]eyond thus fortifying the already developed principle

that a plaintiff may not relitigate a claim for relief by switching legal theories ... would make any very material change in the practice in the federal courts."

■ Looking at the facts of Bilbrough's two actions from a transactional point of view, one basically concerned his discharge while the other basically involved an alleged invasion of police files, a cover-up of that invasion, and the spreading of information in a false light. They are separate transactions. The transactional approach to preclusion in this case does not alter the result produced by an analysis which would look to the theory of liability or to the required evidence. This conclusion is reinforced by considering the particular factors enumerated in § 24.

Turning to the first factor, time, the core of the activities complained of by the respondent in the two actions occurred at different times. The instant complaint alleges a conspiracy in March 1981 to obtain the criminal record information about Bilbrough from the Rock Hall police files, alleges that Bilbrough's display of a gun occurred in March 1981, and does not place in time the other incidents involved in count III. In the federal case the proof was that the superintendent of schools recommended elimination of the position occupied by Bilbrough in a memorandum of June 3, 1981, which was approved by the Board on June 10, 1981. Considered spatially the transaction in count I occurred in Rock Hall, the transaction in count II took place in Denton, Caroline County, and the series of transactions in count III seem to have occurred both in Chestertown and perhaps at various school locations throughout Kent County. The transaction in the federal case, the discharge, occurred in Chestertown.

Motive is another factor bearing on possible transactional unity. In the instant case Bilbrough does not aver any specific motive for petitioners' alleged conduct.

■ Although Bilbrough claimed in the federal case that the petitioners were motivated by political retaliation to discharge him, Judge Young found that the termination was

prompted by a desire to reduce costs and to increase efficiency. Because the motive for termination has been adjudicated, Bilbrough is not permitted in the present action to attempt to prove that his criminal record was obtained and that he was placed in a false light in order to present ostensible, but untrue, reasons for terminating his employment with the Board.

This application of issue preclusion, together with the elimination from this action of loss of income damages under the opinion of the Court of Special Appeals, should considerably reduce the extent to which evidence in the instant case will overlap that in the federal case. Under these issue preclusions the invasion of privacy allegations stand relatively independently of the discharge action and may be conveniently treated as a separate trial unit.

Petitioners' principal argument seems to be that there was evidence at the federal trial which referred to the same subject matter as do Bilbrough's privacy claims. The record before us does not contain the entire transcript of the federal trial. In support of their summary judgment motion petitioners filed as exhibits pages from the federal case transcript containing, presumably wherever it appeared, testimony concerning the subjects referred to in counts I through III of the instant complaint. It is difficult to reconstruct from the selected pages the trial context in which the testimony was elicited or its relevancy to the wrongful discharge claim. For example, Judge Young's opinion, in reviewing the evidence concerning Bilbrough's job performance, referred to "concerns that Bilbrough may have been abusing his position and that he carried a gun on occasion." Petitioners place greatest emphasis on the fact that Bilbrough's counsel in the prior action elicited from him on direct examination the fact that in March 1981 the interim school superintendent discussed with Bilbrough the latter's criminal record and indicated without further explanation that Loller was interested in it. That evidence, and the other bits and pieces assembled from the federal record

by petitioners, fall short of demonstrating that the same transaction is involved in both cases.

In order to accept petitioners' argument in support of the summary judgment, we would have to classify the entire employer-employee relationship between Bilbrough and the Board as the litigation unit. Only in that way would every allegation of a wrong occurring during the relationship become one "claim." So expansive a rule of claim preclusion would have the effect of a compulsory joinder of claims in a plaintiff's complaint, a requirement which the Federal Rules of Civil Procedure and the Maryland Rules have rejected.

Illustrations seven and eight to Restatement § 24 also clarify that the contemplated dimensions of the grouping of facts into transactions, or series of transactions, in order to establish the claim for preclusion purposes, do not extend so broadly as to cover both Bilbrough's federal action and his instant action as it has been restricted. Those illustrations read:

> 7. B owes A $500 on an obligation that matured on February 1. A visits B on June 1 and requests payment, whereupon B commits an unprovoked assault upon A. A sues B on the debt and recovers. A may maintain a second action against B based on the assault.

> 8. A, under a contract of employment with B, is discharged from the job on the alleged ground of his technical incompetence. [One] year later B, in response to an inquiry from C, a prospective employer of A, states that A is an habitual drunkard. A may sue B and recover against him for wrongful discharge without thereby forfeiting his right to sue B on the basis of his report to C.

In illustration seven the relationship of debtor and creditor between the parties is not sufficient to make the creditor's actions for the debt and for the assault committed during an attempt to collect the debt a single transaction or "claim." Illustration eight necessarily implies that the report to the prospective employer occurred sufficiently be-

fore judgment in the first action that the plaintiff could have permissively included the claim based on the report in the wrongful discharge action. Both actions concern the parties' employer-employee relationship and, more particularly, why it ended, but the facts of the two actions are not considered to be so interrelated as to constitute one transaction or a connected series.

*United States v. Athlone Industries, Inc.*, 746 F.2d 977 (3d Cir.1984), although not utilizing Restatement § 24, also illustrates a limit to the dimension of a claim under the modern preclusion analysis. The case involved an ongoing dispute between the United States Consumer Products Safety Commission (the Commission) and manufacturers of automatic baseball pitching machinery. It was the Commission's position that the machines, even when disconnected from their power source, retained such a high degree of tension in the spring and cable that with the slighest vibration the pitching arm would unexpectedly swing forward and downward at great speed striking any unsuspecting person within its range. In a prior action in the United States District Court for the District of Columbia the Commission had sought an injunction and declaration that the machines were "imminently hazardous" under § 12 of the Consumer Products Safety Act, 15 U.S.C. § 2061. That case was closed by a consent judgment which made no mention of the reporting requirements under § 15(b) of the statute. Thereafter the Commission brought an action in the District of New Jersey seeking a civil penalty for failure of the defendant to report that its machine was hazardous when the defendant knew that to be the fact. The District Court dismissed, reasoning that the action was barred by the judgment in the District of Columbia. The Third Circuit reversed. In prior opinions the court had "indicated a predisposition towards taking a broad view of what constitutes identity of causes of action—'an essential similarity of the underlying events giving rise to the various legal claims.'" *Id.* at 984. The court then listed, as factors which it would consider to determine the essential similarity

of the underlying events (1) whether the acts complained of and the demand for relief are the same; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same; and (4) whether the *material* facts alleged are the same. In *Athlone* the earlier action had focused on the fact that the defective products were in commerce and on the defendant's failure or refusal to cease manufacture, sale, and distribution. The gravaman of the action before the court was the manufacturer's knowledge of the defect and its failure to report information regarding the defect. Further, in the imminent hazard case the wrong was distribution in commerce while in the case under consideration the wrong was a failure to report. Looked at another way, the common denominator of defective mechanical pitchers and all of the facts bearing on that aspect of the two actions were not sufficient to preclude the later action on the ground that it presented the same claim as had the earlier.

There is even less of a nexus between the two actions involved here than that between the separate claims in illustrations seven and eight to § 24 or in *Athlone*. Accordingly, we affirm.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONERS.