Herbert S. **EZRIN**, Plaintiff,

v.

Brendan C. **STACK**, Defendant.

No. CIV.A.02–1329 RMC.

United States District Court,
District of Columbia.

Sept. 5, 2003.

Herbert S. Ezrin, Potomac, MD, Pro se.

Marc Allan Busman, Busman & Busman, P.C., Fairfax Station, VA, for Defendant.

## MEMORANDUM OPINION

COLLYER, District Judge.

Herbert S. Ezrin sues Brendan C. Stack, D.D.S., for alleged breaches of Dr. Stack's fiduciary duties as a director of SEB, Inc., a defunct corporation, and for payment of District of Columbia taxes owed by SEB, Inc., and allegedly assessed

against Mr. Ezrin personally. These are helpfully labeled the "Corporate Assets Claim" and the "Tax Claim" in the complaint. Dr. Stack has filed a motion to dismiss and for summary judgment, arguing that the claims have no merit and that these parties have twice litigated these issues in State courts in Virginia and Maryland. Mr. Ezrin, appearing *pro se* here, was represented by counsel in those earlier incarnations of this long-running dispute. He wants this Court to hear the case and argues that the prior rulings were not dispositive of his current arguments. Because the doctrine of *res judicata* bars the re-litigation proposed here, the Court will grant Dr. Stack's motion for summary judgment on this ground without addressing the merits.

## Background Facts

SEB, Inc., a closely-held corporation in which stock was held by Mr. Ezrin, Dr. Stack, and others not involved in this suit, once operated a restaurant in Washington, D.C., known variously as Café Petitto and/or Café Parma.[1] Dr. Stack held a 50% interest in SEB and Mr. Ezrin held a 20% interest. Mr. Ezrin states that he operated and managed the restaurant and SEB from December 11, 1995 to October 24, 1997.

The restaurant(s) did not prosper and SEB filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code on July 15, 1997. On October 24, 1997, Dr. Stack became the President of SEB and took over its management and operation. The Chapter 11 bankruptcy case was dismissed on June 19, 1998. Dr. Stack then closed the SEB restaurant. He is alleged to have signed a new lease for the restaurant space and to have sold

the assets of SEB at less than fair market value to Capital City Bistros, Inc. ("Capital City"), a new corporation he set up and wholly owned. Further, Dr. Stack is alleged to have later sold the new restaurant for approximately $200,000.00, and to have retained the entire proceeds without regard to the interests of any shareholders of SEB.

The complaint also alleges that Dr. Stack failed to pay any taxes, past or current, or to file tax reports during the period of time he operated SEB. Mr. Ezrin asserts that Dr. Stack falsely told the District of Columbia, in June 1998, that Mr. Ezrin was responsible for all taxes even though Dr. Stack was operating SEB at that time. It appears that the District of Columbia assessed taxes, interest and penalties against Mr. Ezrin for the full amount due by SEB which, through July 29, 2000, amounted to $244,594.83.

Prior to, and separate from, these events, Dr. Stack had also loaned money to Mr. Ezrin by way of a series of five promissory notes. In August 1999, the two men met and Dr. Stack "offered Ezrin that if he accepted sole responsibility for District of Columbia tax assessments, then Stack would credit Ezrin against ... certain promissory notes due Stack from Ezrin." Compl. ¶ 19. Mr. Ezrin asserts that he "refused to sign the proposed letters" that would have acknowledged his tax liability to the District of Columbia. *Id.* He also claims that he first learned of the sale/transfer of SEB assets to Capitol City at this meeting.

## The Previous Litigation

Dr. Stack sued Mr. Ezrin in the Circuit Court of Fairfax County, Virginia, in Jan-

---

1. The facts are taken from the allegations of the complaint and the statements of undisputed facts, which, for purposes of a motion for summary judgment, are read in the light most favorable to Mr. Ezrin, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

uary 2000, seeking judgment on the unpaid promissory notes. (Although Dr. Stack lives in Virginia and Mr. Ezrin lives in Maryland, the promissory notes specified that the law of the Commonwealth of Virginia would apply.) Mr. Ezrin filed defenses and a counterclaim. The counterclaim included Count III for "Indemnification" by which Mr. Ezrin claimed that Dr. Stack should pay the District of Columbia taxes assessed against Mr. Ezrin. The counterclaim also included Count IV for "Breach of Fiduciary Duty" and Count V for "Constructive Trust." These two counts alleged that Dr. Stack had engaged in improper activities with SEB, converted its assets through the use of Capital City, and retained the proceeds for himself.

After full briefing and argument, Circuit Court Judge Robert W. Wooldridge, Jr. sustained Dr. Stack's demurrer to Count III without leave to amend on December 15, 2000, and to Counts IV and V on December 20, 2000. Counts IV and V were dismissed with prejudice without leave to amend. During trial on the remaining counts, Dr. Stack and Mr. Ezrin settled the outstanding issues and Mr. Ezrin consented to the entry of judgment in favor of Dr. Stack in the sum of $105,000.00, together with interest at 9% per year until paid. The final order contained the statement "This Order adjudicates all issues contained in Plaintiff's Motion for Judgment, the remaining Counts of Defendant's Counterclaim which were not previously dismissed with prejudice by the orders of this Court dated 12/15/2000 and 12/22/2000, and Plaintiff's affirmative defenses to Defendant's Counterclaim of Set–Off of the Petitto Note Settlement." Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6) and Motion for Summary Judgment Pursuant to FRCP 56(b), Exh. 5 (hereafter "Defendant's Motion to Dismiss").

The judgment from Fairfax County, Virginia, was docketed in the Circuit Court of Montgomery County, Maryland, for purposes of enforcement. In July 2001, Mr. Ezrin filed a motion for judgment in Maryland asserting that the Fairfax County judgment was paid and satisfied based upon "set-off." The basis for the set-off Mr. Ezrin sought is identical to the complaint before this Court, *i.e.*, the Corporate Assets Claim and the Tax Claim. *See* Defendant's Motion to Dismiss, Exh. 6. On October 26, 2001, after Mr. Ezrin's motion was fully briefed, Circuit Judge Nelson W.Rupp., Jr. denied it. *See* Defendant's Motion to Dismiss, Exh. 10.

## Standard of Review

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Federal courts must give a state court judgment "the *res judicata* effect which the judgment would be accorded in the state which rendered it." *Durfee v. Duke*, 375 U.S. 106, 109, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). Because final orders were issued in Virginia and Maryland, the allegations of the complaint must be analyzed under Virginia and Maryland preclusion law. *See* 28 U.S.C. § 1738 (1988).

### Analysis

While the court system is available to resolve disputes between parties, a litigant cannot avoid a negative result by bringing the same claim in a different court and hoping for a different answer. The doctrine of *res judicata*, a Latin phrase meaning "a thing adjudicated," [2] prevents serial litigation over the same set of facts and issues. That is what Mr. Ezrin attempts here. There is no dispute regarding the fact that Mr. Ezrin and Dr. Stack have previously been litigants on opposite sides of two lawsuits. The dispute in the instant case centers on the legal effect of orders issued in those previous cases.

### A. *Res Judicata* and the Virginia Orders

■■■ Under Virginia law, as elsewhere in the country, *res judicata* prevents "relitigation of the same cause of action, or any part thereof which could have been litigated, between the same parties and their privies." *Bill Greever Corp. v. Tazewell Nat'l Bank*, 256 Va. 250, 504 S.E.2d 854, 856 (1998) (quoting *Bates v. Devers*, 214 Va. 667, 202 S.E.2d 917, 920–21 (1974)). The party seeking to assert *res judicata* must prove, by a preponderance of the evidence the "[1] identity of the remedy sought; [2] identity of the cause of action; [3] identity of the parties; and [4] identity of the quality of the persons for or against whom the claim is made." *Davis v. Marshall Homes*, 265 Va. 159, 576 S.E.2d 504, 506 (2003). "As a general proposition a judgment of dismissal which expressly provides that it is 'with prejudice' operates as *res judicata* and is as conclusive of the rights of the parties as if the suit had been prosecuted to a final disposition adverse to the plaintiff." *Va. Concrete Co. v. Bd. of Supervisors*, 197 Va. 821, 91 S.E.2d 415, 418 (1956).

The fourth and third factors can be easily disposed of: in both the instant suit and the Virginia suit the parties have been identical—Mr. Ezrin and Dr. Stack—and, in each suit, Mr. Ezrin and Dr. Stack have been adversaries on opposite sides of the versus. *See Greene v. Warrenton Prod. Credit. Ass'n*, 223 Va. 462, 291 S.E.2d 209, 211 (1982).

The Court finds that the second factor is almost as easily addressed. In Mr. Ezrin's second amended counterclaim filed in Fairfax County, Count 3, "Indemnification," concerned tax liens placed against Mr. Ezrin personally by the District of Columbia that he alleged should have been paid by Dr. Stack when Dr. Stack was operating SEB and the restaurant. *See* Defendant's Motion to Dismiss, Exh. 2 ¶¶ 28—31. Count 4 of the second amended counterclaim in Fairfax Court, "Breach of Fiduciary Duty," alleged that Dr. Stack sold Capital City Bistros, retained all the money for himself, and should have paid the outstanding tax bills with that money. *Id.* at ¶¶ 33–38. Count 4 also alleges that these actions violated Mr. Ezrin's rights as a minority shareholder, "includ[ing] the duty of fair dealing and notification of actions to be taken on behalf of SEB, Inc., obtaining assets for himself and his self-dealing to the detriment of all shareholders, officers and directors of SEB, Inc., including Ezrin." *Id.* at ¶ 40. The court in Fairfax County, Virginia adjudicated the merits of these claims and found against Mr. Ezrin. Together, these claims comprise the Corporate Assets Claim and the Tax Claim in the current complaint. While Mr. Ezrin frames his arguments differently before this Court, the nucleus of facts and the evidence necessary to prove the claims are the same. *See Brown v. Haley*, 233 Va. 210, 355 S.E.2d 563, 567

---

2. Black's Law Dictionary 1312 (7th ed.1999).

(1987) (In determining whether a party is relitigating the same cause of action, the court examines "whether the same evidence is necessary to prove each claim."). Mr. Ezrin's argument that he advances different legal theories in this suit does not avoid dismissal.[3]

With respect to the first factor, the remedy sought in the instant case is the same as the remedy sought in the Virginia litigation. In both suits, Mr. Ezrin seeks damages he allegedly incurred as a result of Dr. Stack's failure to file tax returns or pay taxes on behalf of SEB. *Compare* Compl. ¶ 23 *with* Defendant's Motion to Dismiss, Exh. 2 at ¶¶ 32–46. In addition, he seeks recompense for damages he incurred due to Dr. Stack's alleged wrongful sale of the restaurant's assets.[4] *Compare* Compl. ¶ 21 *with* Defendant's Motion to Dismiss, Exh. 2 at ¶¶ 32–43.

Dr. Stack has established all the elements of *res judicata* by a preponderance of the evidence. Mr. Ezrin may not relitigate in this Court the issues decided against him by Judge Wooldridge of the Fairfax Circuit Court.

## B. *Res Judicata* and the Maryland Orders

As in Virginia, in Maryland, a "valid and final personal judgment rendered in favor of the defendant bars anoth-er action by the plaintiff on the same claim." *FWB Bank v. Richman*, 354 Md. 472, 731 A.2d 916, 927 (1999) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 19 (1982)). A final judgment between the same parties is conclusive "not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit." *Id.* (quotations omitted). Maryland courts consider three elements in determining whether *res judicata* applies to bar a subsequent complaint: "(1) the parties in the present litigation should be the same or in privity with the parties to the earlier case; (2) the second suit must present the same cause of action or claim as the first; and (3) in the first suit, there must have been a valid final judgment on the merits by a court of competent jurisdiction." *Id.* (quoting *deLeon v. Slear*, 328 Md. 569, 616 A.2d 380, 385 (1992)).

The first element is clearly satisfied because in the Maryland suit as well as the instant suit, the sole parties, Mr. Ezrin and Dr. Stack, are identical.

The Court finds that the second element is also satisfied. In determining whether two claims or causes of action are the same for *res judicata* purposes, Maryland courts apply the "transaction test" of § 24 of the RESTATEMENT (SECOND) OF JUDGMENTS. Un-

---

3. Moreover, Mr. Ezrin may not engage in claim-splitting, which is defined in Virginia as "bringing successive suits on the same cause of action where each suit addresses only a part of the claim." *Davis v. Marshall Homes*, 576 S.E.2d at 506. To the extent there are any differences in Mr. Ezrin's claim, he may not split his litigation of them, where they all stem from the same underlying dispute and would require the presentation of the same evidence.

4. On this point, Mr. Ezrin measures his damages differently in the instant complaint than in the complaint he filed in Virginia. In

Virginia, he alleged he incurred damages of $172,367.67 as a result of Dr. Stack's alleged misappropriation of the corporate assets, which was exactly the amount of back taxes owed by SEB that Mr. Ezrin claims should have been paid from the sale proceeds. In the instant complaint, he measures the damages he incurred from the alleged misappropriation as $40,000, or 20% of the sale price of the restaurant which reflects his percentage ownership in SEB. Regardless of the measurement, Mr. Ezrin continues to seek the same remedy—damages arising from the alleged misappropriation of corporate assets.

der This Test, the court considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Kent County Bd. of Educ. v. Bilbrough*, 309 Md. 487, 525 A.2d 232, 238 (1987). This test is satisfied in the instant case because not only are the facts that underlie the Corporate Assets Claim and Tax Claim and Mr. Ezrin's Montgomery County Claim related, they are one and the same.

In Mr. Ezrin's Motion to Enter Judgment Herein As Paid and Satisfied Based Upon Set–Off, filed to counter Dr. Stack's efforts to collect his Virginia judgment in Maryland, Mr. Ezrin argued that the District of Columbia had assessed the full amount of SEB taxes against him personally and that the amount of taxes should be set off against the judgment obtained by Dr. Stack in Virginia. Mr. Ezrin asserted there was an agreement between him and Dr. Stack "that if Ezrin accepted the sole responsibility for the District of Columbia tax assessments, then Stack would give Ezrin a full dollar for dollar credit for taxes assessed him against the debt due from Ezrin on the Promissory Notes due Stack" and that Mr. Ezrin was therefore entitled to a set-off. Defendant's Motion to Dismiss, Exh. 6 at ¶ 6F; *id.* at ¶ 6G. Mr. Ezrin also argued that Dr. Stack misappropriated SEB's corporate assets by transferring the assets to Capital City, later selling the restaurant through Capital City for $200,000 and retaining the proceeds. These actions allegedly deprived Mr. Ezrin of his 20% share of the assets, or $40,000. In his current complaint, Mr. Ezrin reasserts that there was

a set-off agreement between him and Dr. Stack regarding the payment of the District of Columbia taxes and that Dr. Stack owes him the amount the District of Columbia assessed against Mr. Ezrin personally.[5] In addition, Mr. Ezrin contends that he is entitled to 20% of the sale price of the restaurant based upon Dr. Stack's alleged misappropriation of SEB assets. Upon examination of the complaints, it is clear that the causes of action before the Maryland court and this Court are the same.

The third element affecting a *res judicata* analysis—whether the claim was adjudicated finally in the first action—also presents an easy question. There is no doubt that the Tax Claim was fully briefed and litigated and rejected on the merits by Judge Rupp in Montgomery County. This final judgment on the merits prohibits Mr. Ezrin from litigating these same issues again.

### Conclusion

Finding that the doctrine of *res judicata* bars relitigation of all aspects of Mr. Ezrin's Corporate Assets Claim and Tax Claim against Dr. Stack, the Court grants the motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

---

**5.** With the passage of time, the amount of District of Colombia taxes at issue has in-

creased to $244,594.83. *See* Compl. ¶ 24.