762 F.2d 368
 John H. MEARS, Jr., doing business as Mears Yacht Haven, Appellant,
v.
The TOWN OF OXFORD, MARYLAND, Fletcher Hanks, Emory H.
Balderson, James Farmer; William J. Holt, Jr., Arthur D.
Welton, Edmund C. Stanley, Edward Abbott; Clarence Cox,
Sr., Charles E. Partridge, Appellees.
 No. 84-1731.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 10, 1985.
Decided May 22, 1985.
Rehearing Denied June 20, 1985.
 
 Warren K. Rich, Baltimore, Md. (Richard E. Rice, Stephen P. Kling, Niles, Barton & Wilmer, Baltimore, Md., on brief), for appellant.
 David R. Thompson, Annapolis, Md. (Thomas T. Alspach, Franch, Earnest & Cowdrey, P.A., Annapolis, Md., on brief), for appellees.
 Before HALL, SPROUSE and SNEEDEN, Circuit Judges.
 SNEEDEN, Circuit Judge.
 
 
 1
 John Mears, Jr., a developer of commercial marinas, filed a five-count complaint in federal court alleging that the Town of Oxford, Maryland, and several named officials had deprived him of his civil rights in violation of 42 U.S.C. Sec. 1983 and Sec. 1985(3). The Town argued that Mears had litigated the same claims in two prior Maryland state court actions and that Mears' claims were barred under the doctrine of res judicata. The district court found that most of Mears' civil rights claims were actually litigated or could have been litigated in the two prior state court actions in which final judgments were rendered. The district court also dismissed the remainder of Mears' allegations for failure to prosecute, as allowed by Rule 41 of the Federal Rules of Civil Procedure. We affirm the district court's dismissal of the entire complaint.
 
 
 2
 John Mears, Jr., purchased a marina located near the mouth of Town Creek in Oxford, Maryland. In April 1978, Mears applied to the U.S. Corps of Engineers for a permit to construct additional marina slips. The Oxford Town Commissioners--Balderson, Hanks, and Farmar--opposed Mears' application to the Corps.
 
 
 3
 The Oxford Town Commissioners adopted an emergency moratorium on marina expansion on September 29, 1979. All marina expansion was prohibited for 10 months. But on October 14, 1979, the Commissioners adopted Ordinance 165, and the moratorium expired with the enactment of the ordinance.
 
 
 4
 Mears challenged Ordinance 165 in a Maryland state court in Talbot County. In this action, which was heard by Judge Clark, Mears asked for a declaratory judgment stating that the ordinance was unconstitutional. Ordinance 165 created an agency--the Oxford Board of Port Wardens--to regulate construction in public waters, and it included a harbor line beyond which the extension of commercial piers was prohibited. Judge Clark held that the harbor line was too vague to be enforced and that the portion of the statute applying only to commercial marinas was unreasonable. The court found that the rest of the statute was severable and upheld it. The Maryland Court of Special Appeals in a thorough opinion analyzing Mears' federal constitutional arguments against Ordinance 165 affirmed Judge Clark's decision. See Mears v. Town of Oxford, 52 Md.App. 407, 449 A.2d 1165 (1982).
 
 
 5
 While Mears v. Town of Oxford was pending on appeal to the Maryland Court of Special Appeals, Mears applied to the Board of Port Wardens for a permit under Ordinance 165 to add 58 slips to the marina. The Board, on February 7, 1981, approved construction of only 25 slips and required Mears to adopt a plan that was consistent with the Board's decision. Mears filed another state court action challenging the denial of the full 58-slip permit. In this case, styled Mears v. Board of Port Wardens, Mears alleged that he had been deprived of due process and the equal protection of the laws when the Board denied the permit for the full 58 slips. Mears v. Board of Port Wardens is still pending in the Maryland trial court, and the Town of Oxford is a party in that suit.[1]
 
 
 6
 Meanwhile, after the Maryland court heard Mears' appeal in the first state court action, the Oxford Town Commissioners moved to adopt a new ordinance, called Ordinance 173, which would include a harbor line that was not unconstitutionally vague. Mears, alleging that proposed Ordinance 173 would infringe his right to build the 25 slips for which he had been granted a permit, brought two actions--one in state court and one in federal court.
 
 
 7
 Thus, in summary, Mears has filed a total of three state court actions and one federal action in his attempts to obtain some relief from the Oxford Town Commissioners' refusal to allow him to build as many slips as he wants to build. In the first state court action, Mears challenged Ordinance 165. See Mears v. Town of Oxford, 52 Md.App. 407, 449 A.2d 1165 (1982). In the second state action which is still pending, Mears challenged the Oxford Port Wardens' decision to allow him to build 25 slips instead of 58 slips. See Mears v. Board of Port Wardens, Law No. 5291, Talbot Co. Circuit Court, Md. (pending). In the third state action, Mears challenged proposed Ordinance 173. See Mears v. Commissioners of Oxford, Chancery No. 7236, Talbot Co. Circuit Court, Md. In this federal court action, Mears alleged facts related to all the above actions. Judge Harvey initially dismissed substantial portions of the federal complaint on res judicata grounds, and later after Mears failed to comply with the court's orders, Judge Harvey dismissed the remaining claims for Mears' failure to prosecute. See Rule 41 of the Federal Rules of Civil Procedure. The claims against several of the defendants also were dismissed on the grounds that the actions against them were barred by the doctrine of legislative immunity. Mears filed an appeal with this Court and argued that the district court's rulings on all issues should be reversed.
 
 
 8
 In this federal court action, Mears sought both injunctive relief and damages pursuant to 42 U.S.C. Sec. 1983 and Sec. 1985(3) for alleged violations of his Fourteenth Amendment and Fifth Amendment rights. The defendants are a municipal township and nine individuals, all of whom were elected or appointed officials of the Town of Oxford. Defendants Hanks, Balderson, Farmar, Abbott, and Cox were elected Town Commissioners of Oxford.[2] Defendants Holt, Welton, and Stanley are appointed members of Oxford's Board of Port Wardens. Defendant Partridge was a former member of the Oxford Planning Commission.[3]
 
 
 9
 In response to the initial complaint, the defendants filed a motion to dismiss for failure to state a claim or in the alternative a motion for summary judgment. The defendants also asked the court to abstain from deciding certain claims, pending the outcome of the state lawsuits. The district court, after briefing and oral argument, granted the defendants' motion and dismissed all of Mears' allegations, except for the allegations in Count II relating to the Board of Port Wardens' denial of the 58-slip permit. The district court relied upon the principles of res judicata in dismissing Mears' claims, and it refrained from deciding the Count II allegations on the grounds that the plaintiff was litigating the same facts in the ongoing state court action of Mears v. Board of Port Wardens.[4]
 
 
 10
 On appeal, we have first compared the prior state court final judgments with the plaintiff's complaint and amended complaint and decided which of Mears' claims are barred by applying principles of res judicata. Pursuant to the recent Supreme Court case of Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), we have applied Maryland law to ascertain whether the state court judgments should be given preclusive effect.[5] Under Maryland law, three requirements must be met for claim preclusion to apply: there must be a final judgment on the merits in the prior suit, the claim must be substantially the same, and the parties must be the same or in privity. See Alvey v. Alvey, 225 Md. 386, 390, 171 A.2d 92, 94 (1961). We find that these prerequisites have been met in this case. Second, we have reviewed the district court's decision to dismiss the remaining claims under Rule 41 and find that the trial judge did not abuse his discretion.
 
 
 11
 In the first state court suit, Mears v. Town of Oxford, 52 Md.App. 407, 449 A.2d 1165 (1982), Mears challenged Ordinance 165 on numerous grounds. In 1978, Mears had applied for a Corps of Engineers permit to build 88 additional slips at his marina. Later he presented a scaled-down plan for 47 slips and then later changed it to 38 slips. The Town Commissioners voted to oppose the application for 38 slips as well as the fourth amended application for 68 slips.
 
 
 12
 The Commissioners adopted an emergency moratorium on marina development on September 29, 1979, and on October 14, 1979, they adopted Ordinance 165. Clause 3 of Ordinance 165 prohibited any expansion of commercial marinas beyond a harbor line consisting of existing structures.[6] Mears filed a petition for a declaratory judgment on March 26, 1980, challenging the moratorium and clause 3 of the ordinance. The Maryland Court of Special Appeals held that clause 3 of Ordinance 165 violated the Fourteenth Amendment because it was so vague as to violate Mears' right to due process of law and because its application to commercial marinas only was unreasonably discriminatory in violation of the Fourteenth Amendment's Equal Protection Clause. Mears v. Town of Oxford, 51 Md.App. 407, 410, 449 A.2d 1165, 1168 (1982). The court also held that clause 3 was severable from the remainder of the statute which delegated regulatory powers to the Oxford Board of Port Wardens. Id.
 
 
 13
 In Mears v. Town of Oxford, Mears challenged Ordinance 165 on numerous federal constitutional grounds: he argued that the ordinance deprived him of his substantive due process rights under the Fourteenth Amendment; he argued that the ordinance was void for vagueness; he argued that it violated the Equal Protection Clause of the Fourteenth Amendment; and he argued that in not providing for a hearing, the ordinance deprived him of procedural due process. Mears sought to have the entire ordinance struck down; but, the Maryland court invalidated only clause 3 on vagueness grounds. In reaching this conclusion, the Maryland court said that the overall aim of the statute was not to deprive just Mears of his property and that the statute did not constitute an unconstitutional taking. Mears v. Town of Oxford, 52 Md.App. at 411-42, 449 A.2d at 1171.
 
 
 14
 Mears had ample opportunity in this first state court action to allege that the actions of the Commissioners in enacting and enforcing Ordinance 165 violated his federal rights under color of state law in violation of Sec. 1983. Mears did not frame the theory of his declaratory judgment action in terms of a Sec. 1983 action for damages, but he certainly could have done so because a Maryland state court has jurisdiction to hear Sec. 1983 claims. See Martinez v. California, 444 U.S. 277 n. 7, 100 S.Ct. 553 n. 7, 62 L.Ed.2d 481 (1980). See also De Bleecker v. Montgomery Co., 48 Md.App. 455, 459, 427 A.2d 1075, 1077 (1981), rev'd on other grounds, 292 Md. 498, 438 A.2d 1348 (1982) (Md. courts have jurisdiction to hear Sec. 1983 claims). We have compared the allegations set forth in the state court pleading with the allegations set forth in Mears' amended complaint and find that the factual allegations are identical. See MPC, Inc. v. Kenny, 279 Md. 29, 33-34, 367 A.2d 486, 489 (1977) (Claim preclusion applies if the cause of action is the same and if the same evidentiary facts would sustain both actions). See also Bankers & Shippers Insurance Co. v. Electro Enterprises, 287 Md. 641, 415 A.2d 278 (1980) (preclusion principles apply to declaratory judgment actions on matters raised and declared). Mears raises the same challenges against Ordinance 165 in his federal complaint: He argues that the Commissioners violated his rights under the Fourteenth Amendment's Due Process Clause and Equal Protection Clause and under the taking clause of the Fifth Amendment. These claims are barred by the doctrine of claim preclusion.[7] See Kutzik v. Young, 730 F.2d 149 (4th Cir.1984) (Sec. 1983 claim in federal court dismissed on res judicata grounds).
 
 
 15
 After the Maryland Court of Special Appeals found that the harbor lines designated by Ordinance 165 were vague, the Oxford Town Commissioners moved to adopt a new ordinance, called Ordinance 173.[8] Before the Town Commissioners could actually adopt Ordinance 173, Mears filed another new state court action alleging that the Commissioners were attempting to deny him "the right to expand the marina." Joint Appendix, p. 177. Mears alleged that the new ordinance would stop him from building any slips, including the 25 slips for which he had been granted a permit. He sought permanent, mandatory injunctive relief in an action completely separate from his still pending suit. Judge Rasin held a hearing on the issue, and in Mears v. Commissioners of Oxford, he held that Mears was not entitled to injunctive relief. Mears filed an appeal to the Maryland Court of Special Appeals, but withdrew it later.
 
 
 16
 Mears, who has proved fearless in his attempts to embrangle as many judges as possible in this dispute, also sought a preliminary injunction in his Sec. 1983 action which already was pending before Judge Harvey. He sought preliminary injunctive relief against Ordinance 173 on the same grounds, and such relief was not granted.
 
 
 17
 The federal court motion was filed on May 7, 1982; the state court action was filed on March 30, 1982. The state court denied the complaint for injunctive relief on May 10, 1982. Ordinance 173 was actually adopted on May 11, 1982.
 
 
 18
 After the state court denied Mears' request for permanent injunctive relief he did not appeal the decision, but rather he sought to challenge the constitutionality of Ordinance 173 in the federal court Sec. 1983 action. Judge Harvey found that the issue had been litigated in the state court and was barred from being re-litigated. We affirm the district court's dismissal of Mears' claim concerning Ordinance 173.
 
 
 19
 Mears argues that in state court he only challenged the proposed Ordinance 173; and therefore, the issue of whether Ordinance 173 deprived him of his right to expand his slips or "wharf out" was never fairly or fully litigated. Thus, he would have us decide the question of whether Ordinance 173 deprived a riparian owner of an alleged protected property right to construct marina slips into public waters. Mears, however, has not shown that the proposed ordinance and the adopted ordinance are different. Additionally, after carefully reviewing Mears' bill of complaint, the defendants' demurrer and memorandum of law, the state court hearing transcript, and Judge Rasin's order denying the relief, we find that the issue of whether Ordinance 173 impinged upon some protected property interest of Mears was fully litigated and decided on the merits in state court. Judge Rasin specifically held that under Maryland law Mears had "no right which has been denied, impaired, or threatened by the proposed ordinance which is the subject of the Bill of Complaint," and denied the request for a permanent injunction. Joint Appendix, p. 406. Mears motioned the state court to reconsider its decision after the ordinance had passed; however, Judge Rasin refused to vacate or modify the final judgment.
 
 
 20
 Mears argues that he only asked for injunctive relief in the state court suit and not for monetary damages under Sec. 1983. However, the issue of the ordinance's constitutionality as applied to Mears was decided, and we must give preclusive effect to the Maryland decision in this Sec. 1983 action. See Migra v. Warren City School Dist. Board of Education, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (state court judgment must be given same preclusive effect in Sec. 1983 federal court suit as it would be given in state court); Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (preclusion applies to Sec. 1983 actions with respect to issues actually litigated). Thus, Mears' claim that he had a protectable property interest under state law in "wharfing out" was litigated in the state court suit for injunctive relief. Under Maryland law, for issue preclusion to apply the following requirements must be met: the issue raised in the prior action must be identical with the issue presented in the action in question; there must be a prior final judgment on the merits; and the party against whom the estoppel is asserted must have been a party in the prior litigation. MPC, Inc. v. Kenny, 279 Md. 29, 367 A.2d 486 (1977). All these requirements are met and Mears may not now re-litigate the same issue as the basis for his Sec. 1983 action for damages in federal court.
 
 
 21
 In sum, the district court correctly dismissed all of Mears' Sec. 1983 claims related to Ordinance 165 and Ordinance 173. Additionally, the dismissal of the 1985(3) claims for failure to allege or show some racial or other class-based discriminatory animus behind the alleged conspirators' actions was proper. See United Brotherhood of Carpenter & Joiners v. Scott, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (to state a claim under Sec. 1985, plaintiff must show defendants' actions were motivated by racial discrimination).
 
 
 22
 Mears also alleged facts related to the decision of the Port Wardens to allow him to build only 25 slips. Judge Harvey postponed ruling on this claim until the state court in which the same claim was being litigated had an opportunity to render a final judgment. Mears concedes that this issue is still being contested in state court. Judge Harvey instructed counsel for Mears to move forward with the pending state court suit. He also ordered Mears to file another amended complaint in federal court so that any additional claims could be brought to the court's attention. Mears did not comply with these instructions; instead, he misrepresented the status of the federal court proceedings to the state court judge and then asked for a stay of the state court proceedings. See Joint Appendix, p. 440. Thus, Mears obtained a stay in each forum where the exact same issue was being litigated. Mears was ordered by the court to amend his complaint, and Mears never responded. In addition, Judge Harvey took other steps, including writing to the parties requesting status reports on the pending state court action, in an effort to have Mears prosecute the claim to final adjudication in at least one forum. See Joint Appendix, p. 439-442. In light of these facts, the district judge did not abuse his discretion in dismissing the one remaining claim concerning the permit decision of the Board of Port Wardens for the plaintiff's failure to comply with the court's orders. Mears argues that he did not have to comply with the court's orders because the district court had postponed deciding the case. We find no merit in this argument. Mears was instructed to take specific steps to prosecute the action and he refused to comply.
 
 
 23
 For the reasons explained above, the judgment of the district court is affirmed.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The Town of Oxford sought to enjoin the Board of Port Wardens from issuing the 25-slip permit for construction to Mears. Town of Oxford v. Board of Port Wardens, Law No. 5275 Talbot Co. Circuit Court, Md. (pending)
 
 
 [2]
 The district court dismissed all the claims against the Town Commissioners (defendants Hanks, Balderson, Farmar, Abbott, and Cox) on the grounds that they were protected by legislative immunity. The district court correctly relied upon Bruce v. Riddle, 631 F.2d 272 (4th Cir.1980), in holding that these legislators were immune from being sued under Sec. 1983
 
 
 [3]
 Mears argues that the three port warden authorities and defendant Partridge were not parties in any of the prior state court suits and cannot be covered by the doctrine of res judicata. But all the defendants were served in their official capacities as representatives of the Town of Oxford and are in privity with the Town. See Washington Suburban Sanitary Commission v. TKU Assoc., 281 Md. 1, 19-20, 376 A.2d 505, 514-15 (1977) (officers having authority to act on behalf of government are in privity). Mears has in fact alleged that Partridge, Holt, Welton, and Stanley acted in their official capacities on behalf of the Town of Oxford
 
 
 [4]
 The district court relied upon two types of preclusion: claim preclusion and issue preclusion (collateral estoppel). For a definition of these terms, see Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) (Burger, C.J., White, J., Powell, J., concurring)
 
 
 [5]
 The parties agree that Maryland law on the preclusive effect of a prior state court judgment should be applied. Mears, however, argues that the district court referred to federal law in the decision rendered on March 4, 1983. Judge Harvey did refer to federal authorities in his opinion, which was issued before the Supreme Court decided Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); however, Mears motioned the court for reconsideration on this basis, and Judge Harvey held a hearing and denied the motion after considering Maryland law. In light of this fact, we find that there is no need for a remand to the district court
 
 
 [6]
 Ordinance 165, Section 3 provided as follows:
 SECTION 3: The Board of Port Wardens shall have the following powers, duties, and responsibilities:
 
 
 [1]
 To regulate the placement, erection, or construction of structures or other barriers within or on the waters of the municipality, including but not limited to the issuing of licenses to create or build wharves or piers and the issuing of permits for mooring piles, floating wharves, buoys, or anchors, taking into account the present and proposed uses, and the effect of present and proposed uses on marine life, wildlife, conservation, water pollution, erosion, navigational hazards, the effect of the proposed use on congestion within the waters, the effect on other riparian property owners, and the present and projected needs for any proposed commercial or industrial use
 
 
 [2]
 The port wardens shall have the power to regulate the materials and constructions for the aforesaid improvements and to make certain that any improvements in the waters within the municipality do not render the navigation too close and confined. This provision in no way intends to affect or conflict with any zoning power otherwise provided for
 
 
 [3]
 In no case shall the Board of Port Wardens grant any permit or license construction in or of a commercial marina which would extend the area of such marina available for water based boat storage beyond the area within the lines formed by existing structures within the water of the municipality as reflected upon current U.S. Army Corps of Engineers' charts
 
 
 [7]
 In light of the conclusion that Mears had the opportunity to include his Sec. 1983 claim for relief in his state court action challenging the constitutionality of the ordinance, we do not reach the issue of whether Mears has a protected property right to make improvements and construct slips in public navigable waters and thus express no opinion as to the merits of Mears' Sec. 1983 claim
 
 
 [8]
 Ordinance 173 contained comprehensive harbor management legislation that was adopted after the Town obtained a report from the Talbot County Planning Office on the question of developing a management program for municipal waters. See Brief for Appellees, p. 25. The ordinance contained a new harbor line which in general prohibited the placement or erection of any structure channelward of the harbor line. Id. at 35