819 F.2d 1138
 26 ERC 1030
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
JOPPA SAND and GRAVEL COPRORATION, Plaintiff-Appellant,
v.
STATE OF MARYLAND,
Harry R. Hughes, Governor of the State of Maryland,
Department of Natural Resources, Torrey C. Brown, Secretary,
Department of Natural Resources, Harford County, Maryland,
Habern Feeman, Harford County Executive, Defendants- Appellees.
 No. 86-2099.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 7, 1987.
Decided May 27, 1987.
 
 Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, Sitting by Designation.
 Francis John Gorman (Moore, Carney & Ryan, on brief), for appellant.
 M. Brent Hare, Assistant Attorney General, Department of Natural Resources (Max D. Miller, County Attorney; Victor K. Butanis, Assistant County Attorney; Stephen H. Sachs, Attorney General; Thomas A. Deming, Assistant Attorney General, on brief), for appellee.
 PER CURIAM:
 
 
 1
 Joppa Sand and Gravel Corporation ("Joppa") filed suit against the State of Maryland, et als. ("Defendants") alleging that the State, through the Department of Natural Resources ("DNR"), conspired with county agents to restrict Joppa's use and enjoyment of its land. It was Joppa's contention that the State sought to lower the value of its property so that it could, upon condemnation, buy the property at a diminished price. The trial court granted defendants' motions to dismiss[1] on two grounds: first, that Maryland's three-year statute of limitations had run, and second, that the doctrine of res judicata precluded the filing of the action. We affirm the district court on both grounds.
 
 
 2
 In 1972 Joppa acquired 145 acres of land in Hartford County, Maryland, for the purpose of mining gravel and processing sand. The State granted permits to Joppa which authorized the mining of sand and gravel on its land for four years, from 1972 to 1976, but after 1976 the State refused to renew them. Because the State would no longer authorize Joppa to mine its land, Joppa decided to develop the property into a residential community, and filed, in 1978, a plan for residential development which was later rejected by the County.
 
 
 3
 In that same year, 1978, the State, through the DNR, filed an action against Joppa in the Circuit Court for Harford County, contending that Joppa was polluting the water and filling private wetlands without a permit. The State sought both monetary and injunctive relief. In its defense of the matter, Joppa asserted that the DNR came into equity with "unclean hands" because the State had improperly denied it permits to fill the wetlands. Joppa's contention was based upon the fact that Joppa had, on various occasions, applied for permits to fill the wetlands and that those permits had been improperly denied by the State. Joppa asserted that the various State actors conspired together to deny the permits, and it sought to prove its assertion through letter writing and other communications which were circulated between the various state governmental enforcement and planning agencies. The Circuit Court enjoined plaintiff's unauthorized activities and assessed Joppa $13,000 in fines and penalties. The Court of Special Appeals affirmed the decision of the Circuit Court. See Joppa Sand and Gravel Corp. v. State of Md. Dep't of Natural Resources, No. 1344 (Ct. of Sp.App. May 26, 1983).
 
 
 4
 Finally, in 1981, the State initiated condemnation proceedings against Joppa and its 145 acre parcel of land. Coutler v. Joppa Sand and Gravel Corporation, Law No. 655 (Circuit Court for Harford County). On March 17, 1982, Joppa and the State entered into a settlement agreement whereby the State agreed to pay Joppa $515,000 in exchange for the transfer, by Joppa, of its title in the property to the State of Maryland. The terms of this settlement agreement were affirmed by the Circuit Court for Harford County on April 7, 1982.
 
 
 5
 The instant case, filed on April 4, 1985, was dismissed by the trial judge on summary judgment grounds. The court correctly concluded that the action was time barred by the statute of limitations and that the doctrine of res judicata precluded the granting of any relief to Joppa.
 
 
 6
 The Maryland statute of limitations, applicable to the instant action, allows a plaintiff to file suit within three years from the date it knew, or should have known, the wrongs underlying its claim. Md. [Cts. & Jud.Proc.] Code Ann. Sec. 5-101 (1984). See also Poffenberger v. Risser, 290 Md. 631, 636 (1981). The district court found that "Joppa knew or should have known" of the alleged conspiracy between the defendants at the latest in 1981 when the state filed its condemnation action, and at the earliest in 1978 when the DNR filed suit against Joppa. Using either the 1978 or 1981 date, the filing of the lawsuit on April 4, 1985 was, as the court correctly concluded, time barred. The district court relied on Joppa's answer to the state's petition for condemnation which averred that the State had unreasonably and arbitrarily withheld approval of permits, as sufficient evidence of Joppa's knowledge of the alleged conspiracy. Moreover, the trial court concluded that Joppa knew of this alleged conspiracy even as early as 1978 when it asserted an "unclean hands" defense against the State for denying it permits to fill private wetlands.
 
 
 7
 While the appellant now attempts to argue that this action is one for inverse condemnation, and thus the three year statute of limitations applied by the trial court was erroneous, we are unpersuaded. As a practical matter, we find it difficult to imagine an inverse condemnation action where, as here, Joppa had already settled the state's petition for condemnation by agreeing to sell the land to the State for $515,000.
 
 
 8
 The Supreme Court, in United States v. Clarke, 445 U.S. 253 (1980), explained the differences between inverse condemnation and condemnation. Inverse condemnation, the Court defined "as the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." Clarke, supra at 257 (emphasis added). In contrast, the Court defined a condemnation proceeding as "an action by the condemnor to effect a taking and acquire title." Id.
 
 
 9
 Not only did Clarke define inverse condemnation and condemnation, but it also clarified the practical distinctions to be drawn between the two proceedings. Condemnation proceedings, the Court held, "require ... affirmative action on the part of the condemning authority. To accomplish a taking by seizure, on the other hand, a condemning authority need only occupy the land in question. Such a taking thus shifts to the landowner the burden to discover the encroachment and to take affirmative action to recover just compensation." Id.
 
 
 10
 The approved settlement of the State's eminent domain proceeding against Joppa dispels appellant's inverse condemnation argument. As the trial court correctly concluded, Joppa's suit was based on the state's allegedly fraudulent acts to diminish the value of Joppa's property.
 
 
 11
 For all these reasons, we conclude that the trial court was correct in applying Maryland's three-year statute of limitations, and the suit was properly found to be time barred.
 
 
 12
 Not only did the trial court dismiss this action on the grounds that the statute of limitations had run, but it also found that the suit was res judicata. We also affirm the trial court's conclusions on these grounds.
 
 
 13
 In order for a suit to be res judicata it must fulfill the following three requirements: "there must be a final judgment on the merits in the prior suit, the claim must be substantially the same, and the parties must be the same or in privity." Joppa Sand and Gravel Corp. v. State of Md., No. H-85-1468, slip op. at 6 (D.Md. June 17, 1986) citing Mears v. Town of Oxford, Md., 762 F.2d 368, 371-72 (4th Cir.1985).
 
 
 14
 The district court correctly concluded that the claims in the instant suit were substantially similar to the claims previously litigated in the 1978 and 1981 suits.
 
 
 15
 In the instant suit, Joppa alleges that the State and its agents conspired together to diminish the value of Joppa's property so that it would be less expensive for the State to buy upon condemnation. This claim, the district court correctly concluded, was litigated in 1978 when the State sued Joppa for water pollution and illegally filling private wetlands. The trial court found that "[i]n defending the 1978 suit ... [i]nter alia, Joppa asserted ... that the DNR came into equity with unclean hands and the DNR was guilty of unconstitutionally taking its property without due process of law." Joppa Sand, supra, slip op. at 7. The trial court noted that these defenses were "rejected by the trial court and by the Court of Special Appeals." Joppa Sand, supra, slip op. at 8.
 
 
 16
 As to Joppa's instant complaint that its property was taken without adequate compensation, the trial court concluded that "[t]his issue was clearly foreclosed by the 1981 condemnation action." Joppa Sand, supra, slip op. at 8. Moreover, the trial court held that "[p]laintiff Joppa knew or should have known in 1981 of all the facts it is alleging here in support of its claims. The claims asserted here could all have been litigated in the earlier suit." Id.
 
 
 17
 We agree with the trial court's ruling. Both the 1978 suit filed by the State against Joppa and the 1981 settlement agreement operate as a final judgment on the merits. See Steyer v. Westvaco Corp., 450 F.Supp. 384 (D.Md.1978). Moreover, the parties in the 1978 suit and 1981 settlement are exactly the same. Finally, the trial court correctly determined, after applying the "evidentiary test"[2] that the claims in the instant suit were substantially similar to the claims previously litigated in the 1978 and 1981 suits. The prerequisites for res judicata were clearly met in this case, and the trial court appropriately based its ruling on this principle of law.
 
 
 18
 For all these reasons, we AFFIRM.
 
 
 
 [1]
 The trial court treated the defendants' motions to dismiss as motions for summary judgment, since matters outside the pleadings were presented to, and considered by, the Court in its disposition of the matter
 
 
 [2]
 The evidentiary test is applied in Maryland to determine whether two suits are substantially the same. Thus, if the same evidentiary facts would sustain both suits, then the second suit is barred if the other criteria are met. Kutzik v. Young, 730 F.Supp. 149, 151-52 (4th Cir.1984)