Ernest **SNELL**, Plaintiff–Appellant,

v.

**MAYOR AND CITY COUNCIL OF HAVRE de GRACE, a Municipal Corporation of the State of Maryland; Charles D. Montgomery, Mayor; John Correri, Jr.; Frank Hertsch, Esq., Defendants–Appellees.**

No. 87–3010.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1987.

Decided Jan. 25, 1988.

Mercedes Casado Samborsky, Joppatowne, Md., for plaintiff-appellant.

Daniel J. Moore (Semmes, Bowen & Semmes, Baltimore, Md., on brief), for defendants-appellees.

Before PHILLIPS, CHAPMAN, and WILKINSON, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Ernest Snell appeals from an adverse summary judgment in his civil rights action against the mayor and members of the city council of Havre de Grace growing out of the City's termination of Snell's lease of municipal property. Concluding that the district court properly found Snell's action barred by res judicata, we affirm.

## I

In 1976, Snell and the Town of Havre de Grace, Maryland, entered into a lease agreement which gave Snell the exclusive use of the gasoline pier and concession area at the Tyding's Park Marina. Under the terms of the lease, Snell was to operate "a concession at the city-owned gas pier for the sale of gasoline, diesel fuel, motor oil, and boat and fishing supplies." The lease required Snell to submit, as a condition precedent to its effectiveness, a performance bond and a certificate of insurance; in addition, it required him to pay all water and sewage charges in the off-season months. The City retained the right to terminate the lease if Snell breached any of these covenants.

For several years, Snell's fuel business was limited to sales to boats docking at the pier. In April of 1976, however, he began to peddle gas to automobiles as well. At that point, his relations with the City began to deteriorate. On November 6, 1979, following a heated exchange of correspondence, the City notified Snell that it was terminating his lease because of his failure to pay water and sewage bills or to furnish the required certificate of insurance and performance bond. Though he protested that the City's action was itself a violation of the terms of the lease, Snell vacated the premises voluntarily, before the City could bring an action in ejectment.

In December of 1979, Snell brought suit in Maryland state court against the Mayor and City Council of Havre de Grace, asserting claims of trespass, breach of contract, and defamation. In Count I Snell alleged that the City had committed a trespass by coming on the leasehold property and posting a sign announcing that gas would be sold only to boats. In Count II, he alleged that the City had breached the lease's covenant of quiet enjoyment by permitting a disco to be operated next door to his business. In Count III, he claimed that the City had defamed him by publishing false statements about his alleged noncompliance with the terms of the lease.

The state trial judge directed a verdict for the defendants on the breach of contract claim and submitted the rest of the case to the jury. The jury returned a verdict for Snell on both the trespass and defamation counts, but the judge granted

the defendants' motion for judgment notwithstanding the verdict. Snell appealed to the Maryland Court of Special Appeals, which affirmed in an unpublished per curiam opinion. The Maryland Court of Appeals denied Snell's petition for a writ of certiorari.

In August of 1980, while the state court action was pending for trial, Snell filed this federal civil rights action against the same defendants. The factual allegations contained in the federal complaint were virtually identical to those in the state complaint, with one exception: the former contained the additional allegation that the defendants' actions had been motivated by racial animosity and discrimination against Snell, who is black. The theory of recovery asserted in the federal complaint was also different from that in the earlier action: the federal complaint alleged that by trespassing on his property, permitting a disco to operate nearby, and making defamatory comments about his non-compliance with the terms of the lease, the defendants had deprived him of property without due process of law and denied him the equal protection of the laws, in violation of his rights under the fourteenth amendment and 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), and 1988. The complaint also asserted a pendent state claim of tortious interference with contract and with business advantage, based on the same facts.

After final judgment was entered in the state court action, the defendants moved for summary judgment in the federal action, asserting the bar of res judicata. Snell responded by filing a second suit in federal court against the defendants, which was later consolidated with the earlier action. In his second federal complaint, Snell claimed that the defendants had wrongfully terminated his lease, without just cause or proper notice and for racially discriminatory reasons, in violation of his rights under the fourteenth amendment and 42 U.S.C. §§ 1981, 1982, 1983, and 1988. The second federal complaint was markedly different than its predecessors. Instead of focussing on the sign posting, the disco, and the allegedly defamatory statements, which preceded the formal termination of the lease, this complaint focused exclusively on the formal termination. Snell alleged that he had in fact paid all his water and sewer bills; that he had furnished a certificate of insurance; and that, while he had not furnished a performance bond, the city had never required a white lessee to furnish such a bond, nor had it ever terminated a white lessee's lease for failure to do so.

In April of 1983, the defendants renewed their motion for summary judgment in the federal action, claiming once again that Snell's claims were barred by the judgment in the state court action. The district court granted the defendants' motion for summary judgment on all claims. This appeal followed.

## II

The full faith and credit clause of article IV, as implemented by 28 U.S.C. § 1738 (1948), requires federal courts to give state court judgments the same preclusive effect as those judgments would be accorded by a court in the rendering state. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). This principle applies to federal civil rights actions following state court actions. *Migra v. Warren City School District Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (federal action under 42 U.S.C. § 1983). We must therefore look to the law of the State of Maryland, in whose courts Snell first sought relief against these defendants, to determine whether this action is barred. *Mears v. Town of Oxford*, 762 F.2d 368, 371 (4th Cir.1985).

Under Maryland law, as generally, there are three requirements for the application of claim preclusion. First, there must have been a final judgment on the merits in the earlier litigation. Second, there must be an identity of parties or their privies. Third, the causes of action in the successive actions must be the same. *Alvey v. Alvey*, 225 Md. 386, 171 A.2d 92, 94 (1961). In this case, it is undisputed that the first two conditions for the application of res judica-

ta are met; the only question, therefore, is whether this federal action is based on the same "cause of action" as the earlier state court suit.

To determine whether two suits involve the same "cause of action," for res judicata purposes, Maryland courts have traditionally applied the so-called "same evidence" test. *MPC, Inc. v. Kenny,* 279 Md. 29, 367 A.2d 486, 489 (1977). Under this test, as stated, the second suit is barred if the evidence necessary to support a verdict for the plaintiff in it would have been sufficient to sustain a judgment for him in the first suit. *Klein v. Whitehead,* 40 Md.App. 1, 389 A.2d 374, 384 (1978).

In its literal formulation, this test could dictate a fairly narrow approach to claim preclusion. The Maryland courts' actual applications, however, have been decidedly pragmatic rather than technical, with "claim" being construed more broadly than the test might seem to imply. Thus, the Maryland courts have emphasized, for example, that so long as the subject matter of the two suits is substantially the same, a plaintiff cannot avoid the bar of res judicata simply by changing the theory of recovery or seeking a different remedy. *See Mettee v. Boone,* 251 Md. 332, 247 A.2d 390, 395 (1968) ("the same facts, having once been used, without success, in pursuit of one conclusion, cannot, under another label, still be used to obtain a different conclusion"); *see also Alvey,* 171 A.2d at 93–94. A recent decision of this court, *Kutzik v. Young,* 730 F.2d 149 (4th Cir. 1984), applying Maryland law, illustrates application of this broad reading. In *Kutzik,* a visiting professor brought an action in Maryland state court against the University of Maryland and several of its officials, seeking damages for the defendants' refusal to renew his appointment. When the state court dismissed his suit on the ground of sovereign immunity, the plaintiff filed a § 1983 action in federal court, alleging that, in failing to renew his contract, the state defendants had deprived him of liberty and property without due process of law, denied him the equal protection of the laws, and violated his first amendment rights of free speech. Applying Maryland claim pre-

clusion law, this court held that the federal civil rights action was barred by the prior state court judgment, because it sought redress for the same wrong and relied on the same evidentiary facts, simply invoking a different ground for recovery. 730 F.2d at 152; *see also Mears v. Town of Oxford,* 762 F.2d 368 (4th Cir.1985) (federal civil rights action barred, under Maryland claim preclusion rules, by prior state court judgment).

Similarly, Maryland courts have not allowed a plaintiff to avoid the res judicata effect of a prior judgment simply by adding new factual allegations, unless they are facts which could not, through the exercise of reasonable diligence, have been discovered in time to include them in the first suit. *See A.B. Veirs, Inc. v. Whalen,* 256 Md. 162, 259 A.2d 516 (1969). In *Veirs,* the plaintiff brought an action at law for sums allegedly due it for paving defendants' parking lot. When the defendant prevailed on the ground that there was no contact between the parties, the plaintiff brought a second suit in equity, seeking to impose a constructive trust for the same amount on defendant's land. The second complaint added several factual allegations not found in the first: that the defendant knew that his brother, with whom the plaintiff claimed to have contracted, was insolvent and that the defendant concealed this knowledge from the plaintiff and permitted him to continue paving the lot. The Maryland Court of Appeals held that the second suit was nonetheless barred by res judicata, because the plaintiff could have discovered these facts in time to raise a claim of deceit in the first suit, and "application of the doctrine of res judicata is not rendered inapplicable because [plaintiff] can supposedly prove a better case in the second case than he did in the first case." *Id.* 259 A.2d at 520; *see also Alvey,* 171 A.2d at 94 (quoting *Henderson v. Henderson,* 3 Hare 115) ("The plea of res judicata applies ... not only to the points upon which the court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of the litigation, and which the par-

ties exercising reasonable diligence might have brought forward at the time.").

 Applying Maryland's "same evidence" test in line with these state court applications it is clear that the claims asserted in the *first* federal complaint are barred by the state court judgment. Both actions sought to hold the same defendants answerable in damages for precisely the same conduct: the posting of a sign on the leasehold property, the operation of a disco nearby, and the allegedly defamatory statements. Both actions relied on the same set of underlying facts: the events leading up to the termination of Snell's lease. The first federal complaint contained, in virtually identical language, the same factual allegations as the state complaint. The only difference lay in the legal theories invoked to support recovery: where the state court complaint alleged that these facts established trespass, breach of contract, and defamation, its federal counterpart alleged that they established violations of Snell's rights under the due process and equal protection clauses of the fourteenth amendment. The actions differ in form, but not in substance; the evidentiary basis for each claim is precisely the same. It is clear, therefore, that the claims in the first federal complaint are barred under Maryland's claim preclusion rules.

The claim preclusion issue is not quite as clearly answered for the claim of racially discriminatory termination raised in the *second* federal complaint. Though the claim involves the same general subject matter as the state court claims—the landlord-tenant relationship between Snell and the City—it focuses on a different set of basic facts. The state court claims (and the first federal complaint) focused on the events leading up to the termination of Snell's lease—a series of actions by the City which Snell alleged were designed to drive him out of business. The claim raised in the second federal complaint, by contrast, focused on the City's actual termination of Snell's lease, and the factual allegations it contains concern the alleged defaults, the amount of notice given, and the motivation for the termination.

 While the second federal claim is therefore not so obviously the "same" one earlier rejected by the state court as was the first federal claim, we are satisfied that the second also would be found precluded by the Maryland courts. Critically, as in *Veirs*, the facts upon which the second federal claim were based were readily discoverable by Snell when the state action was commenced (or certainly well within the time that it might almost assuredly have been added by amendment). At that time, the lease had already been formally terminated. The gist of the state claims, though couched in terms of independent torts and contract breach, was obviously that the City was engaged in a calculated disruption of Snell's leasehold interest designed effectively to terminate it. Though not pleaded in the state action, it is obvious that any racial animus that underlay the formal termination of Snell's lease necessarily also underlay any earlier conduct aimed at disrupting the lease. And there is no suggestion that any such racial animus as did exist at the earlier stage was only discoverable after the state action was filed. We therefore conclude that under Maryland's application of its "same evidence test," the "claim" rejected in the state court judgment would be held broad enough in its potential reach to encompass the civil rights claims alleged in the second federal action.[*]

AFFIRMED.

---

[*] We are bolstered in our conclusion that the Maryland courts would find preclusion of the second as well as the first federal claim by two decisions of the Maryland Court of Appeals handed down while appeal in the instant case was pending. In *Dill v. Avery,* 305 Md. 206, 502 A.2d 1051, 1053 (1986), the Maryland court indicated a perception that its actual applications of claim preclusion doctrine were essentially in line with the broad "transactional" approach expressed in *Restatement (Second) of Judgments* § 24. And in *Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 525 A.2d 232 (1987), the court explicitly adopted the *Restatement*'s formulation because it was "concerned that sole reliance on the same evidence or required evi-

---

dence analysis to determine if the same claim is
involved in two actions may improperly narrow
the scope of a 'claim' in the preclusion context."
*Id.,* 525 A.2d at 236.

We interpret these decisions as simply recog-
nizing that the "transactional" test was already
being applied in effect under the "same evi-
dence" rubric, and as being aimed merely at
bringing formulation of the principle in line
with already established applications. As such,
these decisions do not establish any new princi-
ple that might raise questions of retroactive

application in this case. For that reason, we do
not consider it necessary to address any issue of
retroactivity that might be presented by inter-
vening adoption of a truly "new rule." *Compare
Bradley v. Richmond School Board,* 416 U.S.
696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476
(1974) (courts apply law in effect at time of
decision unless doing so would result in mani-
fest injustice) *with Chevron Oil Co. v. Huson,*
404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)
(test for assessing manifest injustice preventing
retroactive application).