875 F.2d 1085
 29 ERC 1897, 57 USLW 2719
 EXXON CORPORATION Plaintiff-Appellant,
v.
AMOCO OIL COMPANY, a Maryland Corporation; Abraham
Goldberg; Charles Goldberg; Marvin Goldberg;
George Walter Defendants-Appellees.
EXXON CORPORATION Plaintiff-Appellee,
v.
AMOCO OIL COMPANY, a Maryland Corporation; Abraham
Goldberg; Charles Goldberg; Marvin Goldberg;
George Walter Defendants-Appellants.
 Nos. 88-1729, 88-1730.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 12, 1989.
Decided May 26, 1989.
 
 John Earl Griffith, Jr. (Lewis A. Noonberg, Linda L. Richardson, Piper & Marbury, Baltimore, Md., Richard P. Delaney, Exxon Corp., U.S.A., on brief), for plaintiff-appellant.
 Louis G. Close, Jr. (J. Norris Byrnes, Ann MacNeille, Whiteford, Taylor & Preston, David L. Pippenger, Amoco Oil Co., Baltimore, Md., on brief), John J. Nagle, III (Power & Mosner, Towson, Md., on brief), for defendants-appellees.
 Before HALL, PHILLIPS, and CHAPMAN, Circuit Judges.
 K.K. HALL, Circuit Judge:
 
 
 1
 Exxon Corporation appeals from a judgment entered on a jury verdict which found Amoco Oil Company guilty of negligence but awarded Exxon no damages. Amoco cross-appeals. We remand for entry of judgment notwithstanding the verdict ("j.n.o.v.") in favor of Amoco.
 
 I.
 
 2
 This dispute centers around a ground water contamination problem in Jacksonville, Maryland. In May, 1981, after receiving numerous complaints about well water in the Jacksonville area, the Baltimore County Health Department ("Health Department") began to investigate the possibility of gasoline contamination of local ground water supplies from the storage tanks of three local gas stations. Aided by an Exxon geologist, this investigation revealed that each of the three stations was a source of contamination.
 
 
 3
 The discovery of this contamination spawned a series of lawsuits by local landowners against Gulf Oil Company, Amoco, Exxon, and their station owners and operators. Most of these claims were eventually settled; however, the claims of several landowners against Exxon went to trial. In Exxon Corp. v. Yarema, 69 Md.App. 124, 516 A.2d 990 (1986), cert. denied, 309 Md. 47, 522 A.2d 392 (1987), Exxon was found liable for compensatory and punitive damages that resulted from the leakage from its storage tanks.[1]
 
 
 4
 Immediately before the ground water problem came to light in Jacksonville, Exxon purchased a parcel of property ("Landbank property") directly across the highway from the Amoco station. Exxon purchased the Landbank property, which is advantageously situated beside a crossroads, in hopes of building a new gas station. In early 1983, Exxon applied to the Health Department for building permits to develop the property. Exxon planned to open the new facility in October, 1983. On April 27, 1983, the Health Department denied the permits, principally because of the area's ground water contamination. In an attempt to ease the Health Department's concerns, Exxon promised that it would install expensive and extraordinary secondary containment equipment to ensure that the new gas station would not contribute to the ground water problem. The Health Department stood by its denial, forcing Exxon to appeal the decision to the Baltimore County Board of Appeals. After an October hearing, the Board reversed the Health Department's decision, holding that the contamination on the property was not serious enough to justify denial of the permits. The Board found that the Health Department's action was "indeed arbitrary." The Health Department appealed this decision to state circuit court where, on March 5, 1984, it was affirmed. Exxon proceeded to build the gas station, which was opened for business in October, 1984.
 
 
 5
 Almost immediately after the state court affirmed the issuance of the building permits, Exxon filed this suit in district court. Exxon alleged that the leak from Amoco's storage tanks had contaminated the Landbank property's ground water, and consequently, that Amoco and/or the operators of the Amoco station[2] were liable to it for the damages it sustained in having to wait a year to build the station as well as for damage to the property itself. Exxon alleged four alternative theories of liability--negligent operation of the station, nuisance, trespass, or strict liability. It asserted five elements of damages: (1) $56,343.63 for the cost of the permit litigation; (2) $36,000 for lost rentals for the twelve-month delay; (3) $27,429 in increased construction costs from the delay; (4) $60,427 for the extraordinary secondary containment measures; and (5) $105,000 for the diminution in value to the property.
 
 
 6
 At trial, the district court excluded all evidence of the first three elements of damages. The court premised this ruling on its conclusion that the Health Department's arbitrary denial of the permits, not Amoco's possible contamination of the ground water, was the proximate cause of these damages. The trial court allowed evidence as to the fourth and fifth elements; however, it did not allow the jury to know that Exxon was motivated to install the extraordinary protections because of the permit denials.
 
 
 7
 To help sort out the various claims and elements of damages, the court allowed the parties to submit a special verdict form to the jury. The jury responded "yes" to the question of whether "there was negligence on the part of Amoco which was the direct and proximate cause of any of the damages" claimed by Exxon. However, the jury answered "no" when asked if Exxon had suffered any damages. Further, the jury found that Amoco was not liable under the theories of nuisance, trespass, or strict liability. It is from the judgment entered on this verdict that the parties appeal.
 
 II.
 
 8
 Exxon's primary contention on appeal is that the trial court erred in excluding the evidence of its first three elements of damages ("permit damages") because the court erred in holding that the Health Department's arbitrary action, not Amoco's pollution, was their proximate cause. However, because of the jury's finding that Amoco was negligent in not preventing the contamination, Exxon does not appeal the adverse judgments on its trespass, nuisance, and strict liability claims. Rather, it seeks only a remand for a new determination of damages on the negligence claim that includes the permit damages. Exxon also contends that on remand the trial court should give a different instruction on calculating the diminution in value of the Landbank property.[3] In its cross-appeal, Amoco contends that the trial court erred in not entering j.n.o.v. in its favor on the negligence claim.[4] We address these contentions seriatim.
 
 
 9
 Exxon bases its argument that Amoco proximately caused its permit damages on personal experience. In Yarema, the plaintiffs sought recovery of all damages that were the natural consequences of Exxon's negligent pollution of their ground water. They argued that such consequences had to include all resultant land-use restrictions:
 
 
 10
 a direct chain of causation exists: the release of toxic contaminants polluted the ground water, which in turn prompted the Baltimore County Health Department to issue land restrictions as to the use of water, the obtaining of building permits and the resale of property.
 
 
 11
 Id. 69 Md.App. at 154, 516 A.2d 990. The Yarema court upheld an award of damages based on this "chain of causation" because the land-use restrictions directly impaired the plaintiffs' use and enjoyment of their properties, thereby diminishing their value. However, because this theory of liability is the tort theory of negligence, the Yarema court made clear that recovery was appropriate only because there existed "a direct causal link between defendant's pollution and plaintiff's pecuniary loss." Id. 69 Md.App. at 156, 516 A.2d 990. This "direct causal link" is what is missing in Exxon's present claim against Amoco.
 
 
 12
 To succeed in any negligence claim, a plaintiff must show that the defendant's negligence was the proximate cause of the plaintiff's injuries. Scott v. Watson, 278 Md. 160, 171, 359 A.2d 548 (1976). Proximate causation is a term of art used to describe the various policy considerations that inhere in deciding at what point to limit the legal liability of an actor who is one of the factual causes of a plaintiff's injuries. W. Prosser & W. Keeton, Prosser and Keeton on the Law of Torts, Sec. 42, p. 273 (5th Ed.1984); Peterson v. Underwood, 258 Md. 9, 16, 264 A.2d 851 (1970). These policy considerations loom large when a plaintiff seeks to impose liability on a defendant when the plaintiff's injuries are the result of subsequent actions of a third party not under the control of the defendant. This, of course, is the situation at hand.
 
 
 13
 As the trial court properly ruled, Exxon's permit damages were the result of the Health Department's arbitrary denial of its permit application, not of Amoco's negligence. This conclusion is demanded because the Baltimore County Circuit Court has ruled that the permit denial was not justified by the pollution present on Exxon's property, a result that Exxon affirmatively sought. Thus, this case is not directly controlled by Yarema because there the damages recovered were the result of valid land-use restrictions based on the extent of the properties' contamination. Exxon contends that under the rule of Scott v. Watson, supra, this does not necessarily mean, however, that Amoco can escape liability.
 
 
 14
 In Scott, the Maryland court was faced with a claim that a landlord had negligently maintained an apartment complex in a high crime area. The plaintiff's decedent had been murdered in the building's parking garage. In concluding that the landlord's negligence could be the proximate cause of this injury, the court held that liability could be imposed on the landlord only if his negligence enhanced the risk of the subsequent criminal conduct and if this "enhanced risk" were reasonably foreseeable. Id. 278 Md. at 172-73, 359 A.2d 548; See also Brown v. Baltimore and Ohio R. Co., 805 F.2d 1133, 1138-39 (4th Cir.1986). Exxon argues this rationale directly controls its claim because even though the Health Department's denial was arbitrary, Amoco's negligence foreseeably enhanced the risk that such a denial would occur. We do not agree.
 
 
 15
 The rule of law enunciated in Scott is premised on Restatement (Second) of Torts Sec. 448:
 
 
 16
 Intentionally Tortious or Criminal Acts Done Under Opportunity Afforded by Actor's Negligence
 
 
 17
 The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.
 
 
 18
 Id. 278 Md. at 172, 359 A.2d 548.
 
 
 19
 As the Restatement makes clear, liability for the intentional actions of a third party should not be imposed on a negligent tortfeasor unless the tortfeasor realized, or should have realized, that a third party might take advantage of the opportunity created by the tortfeasor's negligence to injure the plaintiff. In Scott, the court applied this rule and recognized that a landlord in a high crime area could reasonably foresee that negligent safety measures could enhance the likelihood that a tenant might be the victim of a criminal act by a third party. Id. 278 Md. at 173, 359 A.2d 548. Exxon's claim is entirely different. Here the intervening act is not an intentional tort or a crime, but is an arbitrary action by a county government. To hold Amoco liable for the permit damages would be to hold that Amoco should have realized that the Health Department would take advantage of the opportunity created by Amoco's negligent pollution to arbitrarily deny Exxon's building permit. This is a result we cannot reach. It was simply not reasonably foreseeable to Amoco that its negligence would trigger an arbitrary act by the Baltimore County government that would result in harm to Exxon. Prudent public policy supports this conclusion. It is one thing to extend proximate causation, and with it legal liability, to encompass the intentionally or criminally harmful acts of members of the general public; it is quite another to extend the legal liability of private citizens to encompass the arbitrary acts of government bureaucracy. Private citizens cannot be made the guarantors of government.
 
 
 20
 Proximate causation is one of tort law's mechanisms for drawing the line on the legal liability of negligent tortfeasors. We agree with the trial court that in this case the line must be drawn before Amoco's liability is extended to encompass injuries inflicted upon Exxon by the Baltimore County government. The Health Department's arbitrary action was the superseding cause of Exxon's injuries and consequently, the district court properly excluded the evidence of Exxon's permit damages.
 
 III.
 
 21
 Exxon's other contention is that the trial court erred in not giving its proffered instruction on the proper calculation of the fifth element of its damages, diminution in value to the Landbank property itself. This contention is easily dismissed.
 
 
 22
 In its objection at trial on this point, Exxon candidly referred to this instruction as a "computation of damages in a ... nuisance case." Joint Appendix ("J.A.") p. 1645. Our review of the instruction leads us to agree. However, this conclusion forecloses our review because Exxon has placed itself in a catch-22 by not appealing the judgment entered on the verdict against it on the nuisance claim. Any error in the trial court's instruction on this issue has been rendered harmless by the uncontested jury verdict that no nuisance occurred. See Brooks v. Medtronic, Inc., 750 F.2d 1227, 1233 (4th Cir.1984) (Appellant who alleged alternative theories of liability at trial cannot complain on appeal of an error in an instruction on a theory of liability that the appellant voluntarily dismissed with prejudice before sending the case to the jury).
 
 
 23
 Similarly, Exxon did not object to the court below, as it seeks to do before this Court, on the ground that its instruction should be given on its negligence claim. Exxon proffered this instruction on the law of nuisance and never mentioned to the trial court that the instruction should govern its negligence damages as well. In fact, Exxon conceded to the trial court that the instruction was inappropriate for its negligence claim:
 
 
 24
 Trial Court: First place, you can't ask for negligent damages.
 
 
 25
 Exxon's Counsel: We would, we would agree with that, Your Honor.
 
 
 26
 J.A. 1645.
 
 
 27
 The federal rules of civil procedure make clear that for an error in jury instructions to be preserved on appeal the objecting party must state "distinctly the matter objected to and the grounds of the objection." Fed.R.Civ.P. 51. While the Rule does not require surgical precision to preserve error, the objection must be sufficient to "bring into focus the precise nature of the alleged error." Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943). Exxon's objection cannot meet this test. A party certainly may not disavow a basis for objection before the trial court and then claim that the objection preserves that basis for error on appeal. See Wright & Miller, Federal Practice and Procedure: Civil Sec. 2554 at 647 (a party may not state one ground for objection and attempt to rely on a different ground on appeal).
 
 
 28
 Because Exxon's objection has not preserved this error for review, we may not reverse on this point unless the error is plain and results in a fundamental denial of justice. Furka v. Great Lakes Dredge & Dock Co., Inc., 755 F.2d 1085, 1089 (4th Cir.), cert. denied, 474 U.S. 846, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985). Our precedents make clear that this exception must be used sparingly, Estate of Larkins by Larkins v. Farrell Lines, Inc., 806 F.2d 510, 514 (4th Cir.1986), cert. denied, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987), and confined to situations where the basic fairness and integrity of the judicial proceedings are brought into question. Bailey v. Turner, 736 F.2d 963, 972 (4th Cir.1984). We do not think that Exxon's plight presents such a case. Accordingly, we must affirm the district court's instruction on damage to the Landbank property.
 
 IV.
 
 29
 In its cross-appeal, Amoco makes a simple argument. It contends that the jury's finding of no damages renders its verdict of negligence untenable. We agree.
 
 
 30
 In Jacques v. First Nat'l Bank, 307 Md. 527, 531, 515 A.2d 756 (1986), the Maryland court reiterated its long-standing rule that to establish a cause of action for negligence, a plaintiff must prove four elements:
 
 
 31
 (1) a duty owed to him (or to a class of which he is a member);
 
 
 32
 (2) a breach of that duty;
 
 
 33
 (3) a legally cognizable causal relationship between the breach and the harm suffered (proximate cause); and
 
 
 34
 (4) damages.
 
 
 35
 Absent proof of damages, proof of a breach of duty by the defendant does not prove negligence. Peroti v. Williams, 258 Md. 663, 669, 267 A.2d 114 (1970); MacCubbin v. Wallace, 42 Md.App. 325, 328, 400 A.2d 461, cert. denied, 285 Md. 732 (1979). This is exactly the situation at bar. Contrary to Amoco's assertions, there was ample proof in the record to support a finding that Amoco breached its duty to see that its storage tanks did not contaminate the local groundwater. What is missing from Exxon's claim is proof of damages. Exxon has failed entirely in proving that it suffered any damages as a result of Amoco's breach. Thus, Exxon has failed to prove negligence. On Amoco's motion, the lower court should have entered j.n.o.v. in its favor on the negligence claim.
 
 V.
 
 36
 In sum, we hold that the trial court properly excluded all evidence of Exxon's permit damages because they were not proximately caused by Amoco's pollution and that any error in the property damage instruction has been rendered harmless or waived. Because Exxon failed to prove that it suffered any damages as a result of Amoco's breach of duty, we remand this case for entry of j.n.o.v. in favor of Amoco on the negligence claim.
 
 
 37
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 [1]
 In Yarema, Exxon filed a third-party indemnity and contribution action against Amoco based on Amoco's part in the contamination of the area. Amoco was dismissed out of the case, a decision Exxon did not appeal
 
 
 [2]
 The individual defendants were Abraham Goldberg, Charles Goldberg, Marvin Goldberg, and George Walter. The jury found no liability on the part of these individuals and Exxon does not contest that judgment in this appeal
 
 
 [3]
 Even though it does not expressly ask for a new trial on the issue of liability, Exxon conditionally raises two evidentiary issues just in case we would choose to remand for a new trial. Because no new trial is needed, we do not reach these issues
 
 
 [4]
 Amoco also argues that its dismissal from Yarema is res judicata to Exxon's claim for contamination of the Landbank property. This argument is meritless. The Yarema litigation involved the contamination of different properties by the old Exxon station, a different source. In sum, Yarema was an entirely different case. While Maryland's liberal rules of joinder arguably may have allowed Exxon to assert this separate claim in Yarema, Exxon's choice not to certainly does not preclude it from doing so now. Kent County Bd. of Educ. v. Bilbrough, 309 Md. 487, 497, 525 A.2d 232 (1987) ("... scope of a cause of action for claim preclusion purposes is not as broad as the scope of permissible joinder under modern pleading codes.") (emphasis in original)