**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4791**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

JESUS ESTEVEZ ANTONIO, a/k/a Jesus Antonio Estevez,

                    Defendant - Appellant.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Claude M. Hilton, Senior
District Judge.  (1:06-cr-00500-CMH)

Argued:  December 5, 2008          Decided:  February 23, 2009

Before MICHAEL, MOTZ, and KING, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED:** Richard Donald Dietz, KILPATRICK & STOCKTON, L.L.P.,
Winston-Salem, North Carolina, for Appellant.  Richard Daniel
Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia,
for Appellee.  **ON BRIEF:** Adam Howard Charnes, KILPATRICK &
STOCKTON, L.L.P., Winston-Salem, North Carolina, for Appellant.
Chuck Rosenberg, United States Attorney, Alexandria, Virginia,
for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jesus Estevez Antonio (Estevez) appeals his sentence for distribution of crack cocaine and conspiracy to distribute powder cocaine on the grounds that the district court erred in treating the sentencing guidelines for crack cocaine as mandatory. Estevez contends that he should be resentenced in light of Kimbrough v. United States, __ U.S. __, 128 S. Ct. 558 (2007), a case decided after he was sentenced by the district court. Kimbrough held that the crack sentencing guidelines, "like all other Guidelines, are advisory only." 128 S. Ct. at 564. We conclude that Estevez raised a Kimbrough-type objection at his sentencing hearing, thereby preserving for appeal the argument that the crack guidelines are advisory. Because Kimbrough requires that Estevez be resentenced, we vacate his sentence and remand for resentencing.

I.

In October 2006 Estevez and his codefendant, Ruben Chavez Paz, were arrested and charged in a criminal complaint with conspiracy to distribute cocaine. The substance seized from Estevez and Chavez Paz when they were arrested appeared to the naked eye to be powder cocaine. Chavez Paz pled guilty to a one-count information charging him with conspiracy to distribute powder cocaine in violation of 21 U.S.C. § 846; he was sentenced

2

to 70 months in prison. After Chavez Paz's plea and sentence, but before Estevez's indictment, government lab results showed that the cocaine seized from the defendants was actually crack cocaine. Thereafter, Estevez was indicted for conspiring to distribute both powder and crack cocaine, see 21 U.S.C. § 846 (count 1); distributing 5 or more grams of crack cocaine, see id. § 841(a)(1) (count 2); distributing 50 or more grams of crack cocaine, see id. § 841(a)(1) (count 3); and tampering with witnesses, see 18 U.S.C. §§ 1512(a)(2)(C), 1512(b)(3) (counts 4 and 5). The jury convicted Estevez on the charge of conspiracy to distribute powder cocaine and the two charges of distributing crack cocaine; he was acquitted on the remaining charges.

Estevez's presentence report calculated a guidelines range of 151 to 188 months in prison. At the sentencing hearing Estevez made two arguments relevant to this appeal. First, he contended that the district court should take into account the fact that his codefendant, Chavez Paz, had received a sentence of 70 months and that it would be improper for him to receive a substantially higher sentence for engaging in identical conduct. Second, he pointed out that the U.S. Sentencing Commission was seeking congressional approval of guideline amendments that would reduce the sentencing disparity for crack and powder cocaine offenses. Estevez's sentencing exposure on his crack cocaine convictions illustrate the disparity. At the time of

3

Estevez's sentencing, for example, a defendant, like Estevez, convicted of distributing 5 grams of crack cocaine faced the same sentence as a defendant who distributed 500 grams of powder cocaine. This disparity had come to be known as the "100:1 disparity" or the "crack/powder disparity." The guidelines for crack cocaine have since been amended to reduce this disparity. U.S. Sentencing Commission Guidelines Manual (U.S.S.G.), supp. to app. C, amend. 706 (2007); see U.S.S.G. § 2D1.1 (2008).

At the time of Estevez's sentencing, case law in this circuit did not permit a district court to use the 100:1 disparity as a basis for a variance sentence below the guidelines range for crack cocaine offenses. United States v. Eura, 440 F.3d 625, 632-34 (4th Cir. 2006). In Estevez's case the district court found that "the Guideline factors" for Estevez's crack and conspiracy convictions had been "properly assessed at a range of 151 to 188 months," J.A. 56, and the court imposed a sentence of 151 months. The court did not discuss the crack/powder disparity arguments made by Estevez.

Estevez appealed his sentence, and on November 6, 2007, his trial counsel filed a brief under Anders v. California, 386 U.S. 738 (1967), stating that he believed that Estevez had no meritorious issues on appeal. On December 10, 2007, the Supreme Court decided Kimbrough v. United States, which held that "it would not be an abuse of discretion for a

4

district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve [18 U.S.C.] § 3553(a)'s purposes, even in a mine-run case." 128 S. Ct. at 575. Kimbrough overruled United States v. Eura, which had made "the crack/powder disparity effectively mandatory." Id. at 564.

In January 2008 Estevez filed a pro se brief challenging his sentence as inconsistent with Kimbrough. We ordered supplemental briefing on Kimbrough's effect on Estevez's appeal, and we twice appointed new counsel for him. The central issue is whether we should order a new sentencing hearing to allow the district court to reconsider Estevez's sentence in light of Kimbrough.

## II.

The government argues that Estevez did not preserve a Kimbrough-type objection to the district court's treatment of the crack/powder guidelines disparity as mandatory. In order to preserve a claim of error, a party must "inform[] the court -- when the court ruling or order is made or sought -- of the action the party wishes the court to take." Fed. R. Crim. P. 51. "While the Rule does not require surgical precision to preserve error, the objection must be sufficient to 'bring into focus the precise nature of the alleged error.'" Exxon Corp. v.

Amoco Oil Col., 875 F.2d 1085, 1090 (4th Cir. 1989) (quoting Palmer v. Hoffman, 318 U.S. 109, 119 (1943)).

Estevez made two arguments at his sentencing hearing that, taken together, were sufficient to preserve for appeal a challenge to the crack/powder disparity in the sentencing guidelines. First, he argued that he should receive a sentence commensurate with that of his codefendant, Chavez Paz, who engaged in identical activity. While this argument did not mention the 100:1 disparity in so many words, the difference in guidelines treatment for crack and powder cocaine offenses is in part the foundation for the argument. One of the primary reasons for the difference between Estevez's sentence (151 months) and Chavez Paz's (70 months) was that Estevez's conviction was for crack cocaine, while Chavez Paz's was for powder cocaine. This sentencing difference occurred despite the fact that the pair engaged in the exact same criminal behavior. Estevez contends, therefore, that his request for parity in sentencing with Chavez Paz should thus be viewed as an argument against treating powder and crack cocaine differently for sentencing purposes. This argument is undercut to some extent by the fact that the basic reason for the difference in sentences was that Chavez Paz was mischarged with a powder cocaine offense and managed to plead guilty before the

6

government's lab results were completed. Nevertheless, the argument was grounded in the 100:1 disparity.

Estevez's position is bolstered by his second argument in district court. Estevez emphasized the proposal by the Sentencing Commission to reduce the crack/powder guidelines disparity. In doing so, he was asking the district court to consider the Commission's proposal as confirmation that the 100:1 disparity was excessive and that a downward variance was warranted. This placed the crack/powder disparity before the district court and was enough to bring into focus Estevez's assertion that a sentence within the then-existing guidelines range for crack offenses was greater than necessary to achieve the goals of § 3553(a) in his case. In addition, Estevez's lawyer acknowledged, in obvious recognition of Eura, that he was "preserv[ing] th[e] argument for Mr. Estevez." J.A. 48. The government's response at the hearing reveals that it understood the gist of Estevez's argument. The government said that Estevez, in requesting a lighter sentence to avoid the disparity, was "asking the Court to ignore the statutory scheme as it exist[ed]" at the time. J.A. at 53-54.

Estevez's arguments were sufficient to preserve his objection to treating the guidelines for crack cocaine as mandatory. Because Estevez preserved his objection, and because Kimbrough now makes clear that it was error for the district

7

court to treat the crack cocaine guidelines as mandatory, the burden is on the government to establish that the error was harmless. See United States v. Robinson, 460 F.3d 550, 557 (4th Cir. 2006). The government has not met its burden because it has not pointed to anything in the record to indicate that the district court would have imposed the same 151-month sentence on Estevez if it had had the benefit of Kimbrough at the time of sentencing. Estevez is therefore entitled to a new sentencing hearing, which will allow the district court to reconsider the sentence in light of Kimbrough. Estevez's sentence is vacated, and his case is remanded for resentencing.

VACATED AND REMANDED